# CHARLESTON

HURLEY *v.* HURLEY.

Submitted June 8, 1911.   Decided November 12, 1912.

1.  HABEAS CORPUS—*Pleading—Replication to Return.*
    In *habeas corpus*, the want of a replication to the return is
    not ground for reversal when the court or judge has heard the
    matter on evidence as though the return was denied.   (p. 270).

2.  SAME—*Custody of Minor.*
    The father is legally entitled to the custody of his infant
    child, if fit for the trust, and the same should not be denied
    him unless the child's welfare or other considerations clearly
    outweigh his legal right.   (p. 271).

Error to Circuit Court, Harrison County.

Application of Peter Hurley for writ of *habeas corpus* to Mary
Ellen Hurley and others.   Writ granted and defendants bring
error.

*Affirmed.*

*Edward G. Smith* and *Stephen G. Jackson,* for plaintiff in
error.

*Cato & Bledsoe,* for defendant in error.

ROBINSON, JUDGE:

The writ of error herein lies to a judgment in *habeas corpus*
proceedings, giving to Peter Hurley the custody of his infant
son.   It will serve no purpose to detail the facts—sentimental
and romantic though they be—out of which the proceedings
arose.   The story is an old one, of a marriage, a child, a sep-
aration, and a determined effort on the part of each parent to
deprive the other of the custody of the offspring.

The writ issued against Mary Ellen Hurley, the mother of the
child, and F. M. Ashcraft, its step great grandfather, who had
been appointed its guardian, though the child had no estate.
Both of these parties made due return to the writ.   The mother
disclaimed that she had the custody of the child and averred that
it was in the custody of its duly appointed and qualified guardian.
The guardian made return that the child was lawfully in his
custody, averring that the father had abandoned the child, and

that in any event he was wholly unfitted to have its custody by reason of immorality and other shortcomings on his part.

As to the matters arising on the writ and the returns thereto, the court heard verbal testimony of witnesses for both the petitioner and the guardian, together with one deposition for the latter. A decree of divorce and the record on which the same was based, in a suit by Mary Ellen Hurley against Peter Hurley, was also considered. The decree of divorce had been obtained shortly prior to the trial of the proceedings in *habeas corpus*. The grounds alleged for the divorce were cruel and inhuman treatment. The decree was obtained in the absence of the defendant and merely on order of publication. Though the custody of the child was sought by the mother in the divorce suit, the decree was silent in that regard.

Respondents submitted themselves to a trial of the matters arising on the returns, notwithstanding those matters were not traversed by replications. Now they insist that the facts alleged in the returns were conclusive because they were not denied. Though the case was tried as if replications to the returns were in, they would have the court reverse merely for the want of the replications. We concede that the matters set up in the returns, without more, would suffice to deny the judgment. But the court heard more. It heard proof in denial of the matters on which respondents relied. If the case had rested on the returns simply, the judgment would be clearly wrong. They were complete answers denying that which petitioner sought. *Brand* v. *Swindler,* 68 W. Va. 571. However, when the case has been tried as though the returns were denied, we should not be so technical as to reverse and remand merely for an opportunity to put in that which really was considered as in.

It is true that trial by jury without issue joined is error for which the judgment will be reversed. *Shires* v. *Boggess,* 68 W. Va. 137. We are not willing, however, to carry that common law principle further and apply it in proceedings like those under consideration. The principle did not originally apply in *habeas corpus* as it originally did, and still does, in ordinary trial actions. At common law the return in *habeas corpus* was conclusive; there was no call for issue and trial of fact. Church on *Habeas Corpus,* (2nd Ed.), sec. 149. By statute, *habeas corpus* has been liberalized. "In this State the court is not precluded

by the return from inquiring into the truth of the matters therein alleged." *State* v. *Reuff*, 29 W. Va. 751. The statute provides for trial of fact beyond the return. The court or judge may hear "the matter both upon the return and any other evidence." Code 1906, ch. 111, sec. 6. The statute does not specifically provide for a replication to defensive matter in the return as a prerequisite for a hearing or trial thereon. Perhaps, it would be good practice to employ a replication so as to make an issue on the return before the hearing. It would, at least, be promotive of regularity to do so. But neither by the common law nor by statute has a replication in such case ever been directly demanded.

The writ of *habeas corpus* as a remedy in cases pertaining to the custody of infants is of an equitable nature. *Green* v. *Campbell*, 35 W. Va. 698. Why should the technical rules of the common law be applied to it so far as to reverse for the mere failure to make a complete joinder of issue? *Habeas corpus* proceedings in such cases are analogous to suits in equity. The want of a replication in a suit in equity where the defendant has taken proof as if there had been a replication can not be ground for reversal. Code 1906, ch. 134, sec. 4. Of course we do not mean to say that this statute applies to *habeas corpus* proceedings. It does, however, indirectly bear on all proceedings that are analogous to suits in equity. It shows the spirit of our jurisprudence in relation to the want of a replication in proceedings of an equitable nature where the parties have proceeded as if a replication was filed.

Some other technical objections to the proceedings are raised. They are plainly untenable and demand no further comment.

The law in relation to the rights of parents to the custody of their infant children is fully enunciated in former decisions of this Court. It needs no repetition at our hands. *Mathews* v. *Wade*, 2 W. Va. 464; *Rust* v. *Vanvacter*, 9 W. Va. 600; *State* v. *Reuff, supra; Green* v. *Campbell, supra; Cunningham* v. *Barnes*, 37 W. Va. 746. The case under consideration calls for the application of no new principle. Indeed the general principle applicable for the determination of the case is found in the statute itself, wherein it provides: "The father of the minor, if living, and in the case of his death, the mother, if fit for the trust,

shall be entitled to the custody of the person of the minor, and
to the care of his education." Code 1906, ch. 82, sec. 7.

"The father is the natural guardian of his infant children,
and in the absence of good and sufficient cause shown to the judge
or court, such as ill usage, grossly immoral principles or habits,
want of ability, etc., is entitled to their custody, care and educa-
tion." *Rust* v. *Vanvacter, supra.* In connection with this
statement of the law, Judge HAYMOND said: "The custody of
the minor will be assigned to the person having the right, unless
it appears he is an improper person to take it. And when such
person has not the custody, and is seeking to be restored to it,
the court will exercise its discretion according to the facts, con-
sulting the wishes of the minor, if of years of discretion; if not,
exercising its own judgment as to what will be best calculated to
promote the interest of the child, having due regard to the legal
rights of the party claiming the custody."

In the proceedings we have here for review, the father is seek-
ing the custody of his infant son. The statute gives him the
right to that custody if he is fitted for the trust. The case in-
volves no considerations that affect the statutory rule, such as
we find in *Green* v. *Campbell, supra,* and *Cunningham* v. *Barnes,*
*supra.* Respondents met the demand of petitioner for the en-
forcement of his legal right to the custody of his child by alleg-
ing that he was unfitted for the trust by reason of neglect, im-
morality, bad temper, want of ability, and other considerations.
The court that had the parties themselves and practically all the
witnesses before it has ruled against the contention that the
father is so unfitted as to be denied the custody of his son, or
that the child's welfare demands that the custody be left with the
step great grandfather.

A careful review of all the evidence in the case leads us to
the conclusion that respondents did not show that the father was
so unfitted for the trust as to be denied that which was his both
by nature and by the terms of the statute. Certain it is that
we do not feel justified in disturbing the finding in that behalf
made by a considerate and just trial judge. It is not proved that
the father is a bad man. He is shown to have some derelic-
tions, as all human nature has. The age of the perfect man is
not yet at hand. Upon the whole, the evidence shows Peter Hur-
ley to be a sober and industrious man. It shows that he is affec-

tionate toward his child. It shows that fortune has recently come to him so that he can well provide for his son. The charge that he abandoned the child to strangers is not sustained. Nor does it appear that the best interests of the child so demand that it be left where it is as to outweigh the legal right of the father to its custody. There are considerations in relation to the situation of respondents that must have weight in the determination of the serious question of the child's welfare. No doubt these considerations controlled to some extent the finding made by the trial judge.

The legal rights of the father and the circumstances of the case in other respects lead us to an affirmance of the judgment.

*Affirmed.*