# CHARLESTON

STATE EX REL. COFFIELD v. BONAR *et als.*

Submitted October 27, 1914.    Decided December 15, 1914.

1. HABEAS CORPUS—*Custody of Child—Waiver of Right.*

    The absolute right of custody of a minor child, accorded by law to the father, under normal circumstances, may be waived in favor of another person by contract. (p. 335).

2. SAME—*Custody of Child—Waiver of Contract.*

    In such case, the contract controls, unless the welfare of the child demands a change of the custody established by the contract. (p. 335).

3.  SAME.

> That such custody partially denies association of the infant with brothers and sisters is not a circumstance of sufficient weight to set aside the contractual provision for custody. (p.·335).

(ROBINSON, JUDGE, dissenting.)

Error to Circuit Court, Marshall County.

Habeas corpus by the State, on relotion of John D. Coffield, against Fannie Bonar and others. Judgment for relator, and defendants bring error.

*Reversed and Rendered.*

*J. M. Ritz,* for plaintiffs in error.

*W. C. Grimes* and *Chas. E. Carrigan,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment on a writ of *habeas corpus,* complained of here, awarded the custody of a female child about eleven years old to her father against the claim of her maternal grandmother.

Both the relator and the respondent are morally above reproach and each is financially able to provide amply for the comfort of the child. Sometime in 1907, the father had committed her to the care of the grandmother and she remained there for nearly a year. Then she went back to her father and staid about a year. In August 1909, she went again to her grandmother and has since remained there. About two years later; the father demanded possession of her which was refused and this proceeding ·was instituted in August, 1911.

The first surrender of her possession and custody was occasioned by the death of the mother and inability of the father properly to care for the child. At that time he was a huckster and necessarily absent from home a great deal. For a while he kept two servant girls, but they left him and he was unable to procure another house-keeper. Having two children of very tender age, a boy and a girl, he committed the former to the care of his aunt and the latter to the care of his mother. The other grandmother, respondent and mother-in-law of the .

plaintiff, had several times asked for permanent possession and custody of the little girl. In 1907, the relator went to her home on a visit and then and there gave her permission to send for the child and take possession of her. Whether the father assented to her permanent custody by Mrs. Bonar or to temporary care only is an important issue in the case. He admits she had previously asked for a complete surrender, but does not think she did so on the occasion of his acceptance of her offer, although he declines positively to swear she did not. He also admits nothing was said on that occasion about the duration of the custody. On the other side, stands the positive and emphatic testimony of Mrs. Bonar, her son David Bonar and her daughter, Mrs. Fletcher, that there was an express and complete agreement of surrender of the custody. This agreement, whatever its character, was speedily executed. Mrs. Fletcher went to Moundsville and got the child and took her out to Mrs. Bonar's home. As evidence of his intenton and improbability of the agreement imputed to him, the plaintiff says he had promised his deceased wife to keep the children together. He also relies upon the grandmother's admission that she would have taken the child temporarily and that she did not know she had any right to keep her against the will of the father, until a neighbor informed her she could. Another circumstance of similar import is the interruption of the grandmother's actual custody in 1908. Coffield remarried in that year, and, sometime after his second marriage, taking with him his little son Cecil, full brother of the little girl, visited Mrs. Bonar, on a certain Saturday and Sunday, and, on leaving, took the little girl with him. The Bonars say it was distinctly understood on that occasion that he was taking the child for a short visit of two or three weeks, on which he desired to have pictures of the two children taken together, after which he was to bring her back, or let them know when to come to Cameron for her. Mrs. Fletcher says she was present on that occasion and fully confirms the statements of Mrs. Bonar and her son. Coffield says he told them he had come after the child and they made no objection to his taking her. However, he took with her only a portion of her clothing, but the balance of it was sent to her later. He kept her from June

1908, until August, 1909, when he again visited his mother-in-law, accompanied by both children, and left the little girl with her. He says she was left there under an agreement on the part of the Bonars to keep her only as a visitor for two or three weeks. They deny any such agreement, saying the child declined to go back with him and he left her there without any new agreement. In June, 1911, he wrote them a letter in which he complained of their failure to bring her out to see him and his family and said he would bring "her home to stay," if they did not do so, or bring her to Cameron, on the next Saturday or Sunday, so he could take her home for a visit. It seems to be admitted that the Bonars have provided all the little girl's clothing and toys, since she was taken to their home in 1907. When her father took her away in 1908, he did not ask for her clothing or toys, a circumstance inconsistent with his version of that transaction.

Legal principles declared in *Fletcher* v. *Hickman,* 50 W. Va. 244; *Cunningham* v. *Barnes,* 37 W. Va. 746; *Green* v. *Campbell,* 35 W. Va. 698 and *Rust* v. *Vanvacter,* 9 W. Va. 600, according to the father the right of custody, in the absence of proof of unfitness on his part or his waiver of the right to another, by contract, limit the range of inquiry. It is necessary only to ascertain (1) whether there was such a contract as the respondents assert, and (2), if so, whether the welfare of the child requires the change of custody sought by this proceeding.

On the first question, the evidence preponderates decidedly in favor of the respondents. Knowing they desired the permanent custody of the child and had repeatedly asked for her, the relator placed her in their care, when he was utterly unable to give her proper care and had no reason to believe he would be able to do so within any reasonable time. He admits nothing was said on that occasion as to how long they were to keep her and that they had previously made repeated requests for his permanent relinquishment of his right of custody. That was a continuing offer which he, by his own admission, notwithstanding his subsequent and present protestations, accepted in 1907; and this admission accords wth the positive testimony of three credible witnesses who say he in express terms made a complete surrender of

custody on that occasion. Nothing in the subsequent conduct of the parties can be regarded as a rescission of this agreement or waiver of the right conferred by it. Nothing in the transaction of 1908 gave Mrs. Bonar notice of intent on the part of the relator to abrogate the agreement or deny its existence. All the circumstances indicate that he took the child away for a visit to his home. That her visit was longer than it was intended it should be is unimportant, and the grandmother's visit in August or September, 1908, with evident intent to bring her back, negatives intent on her part to waive the benefit of the agreement. She says she asked them on that occasion to let the child come back and they evaded her request. After that, she sent the remainder of the child's clothing and her play-things to her, but that implied no waiver, for those things were essential to the little girl's comfort. Nor is her ignorance of the law or her legal right by virtue of the contract, or her admission of willingness to have given the child temporary care, in case of refusal of the father to give her up permanently, any evidence of waiver or contradiction of her testimony as to what the contract was. She had never asked for a temporary surrender and it does not appear that the relator knew, at the time of his relinquishment, the respondents were willing to take the child otherwise than permanently. Hence, clearly he could not have relied upon that in the surrender he made in 1907. The only state of mind on the part of the respondents of which he then had any knowledge was that evidenced by the offer he admits they had made. He says nothing of any offer at any time, prior to the transaction of 1907, or at the same time thereof, to take the child temporarily. Manifestly, therefore no such offer or intent on the part of the respondent entered into it.

If the welfare of the child demanded a change of custody it would prevail over the contract, but the evidence discloses no such necessity. Both parties are amply able to take care of her and provide for her. The respondents send her to the public school regularly and often to Sunday school and church. The bachelor uncle, a former school teacher, aids her in the preparation of her lessons and takes her to school and brings her home in bad weather. At her father's home, the

school and church are more accessible, but so slight a difference cannot be permitted to control. Lack of opportunity for association with other children and particularly her brother and the children of the second wife is relied upon as a controling circumstance, but we do not so regard it. Whether such association would be beneficial or otherwise is problematical. The burden of the care of the younger children, with the incident deprivation of time for study and recreation, might greatly outweigh all of the supposed advantages. Besides the respondents have the burden of the care of one child only, while the relator would have that of at least four. All the circumstances considered, the trial court was unable to say the child's welfare demanded a change of custody and we do not think the facts warrant disturbance of the finding on that question.

The judgment complained of will be reversed and judgment for the respondents rendered here.

*Reversed and Rendered.*