# CHARLESTON.

BUSEMAN v. BUSEMAN *et als.*

Submitted February 18, 1919.   Decided February 25, 1919.

1.  PARENT AND CHILD—*Father's Right to Custody and Control.*
    The father, if living, is the natural guardian of his infant children, and if not incapacitated or unfit is entitled to their custody, care, and control in preference to the mother. (p. 500).

2.  DIVORCE—*Custody of Children—Discretion of Court.*
    The discretion given by section 11 of chapter 64 of the Code, upon decreeing a divorce, or where the parties are living separate and apart, to determine with which of the parents their infant children shall remain, and to provide for their care, custody and maintenance, should be exercised with due regard to the natural and legal rights of the parents, where nothing has intervened justifying denial of such parental rights. (p. 500).

3.  SAME—*Custody of Children—Circumstances.*
    When in a suit for divorce the mother is decreed to have de-
    83 W. Va.

serted and abandoned her husband without just cause, and has thereby broken up their home, and a decree of separation is pronounced against her, unless the father has relinquished his rights to another or is financially or physically unable or morally unfit for the trust, the care, custody and maintenance of his infant children should be committed to him as their natural guardian. (p. 501).

4. SAME—*Custody of Children—Agreement by Father.*
Where pending a suit by husband against wife for divorce, he makes a contract with her for the care, custody and maintenance of their infant child by a stranger, and thereafter consents to interlocutory orders so disposing of the infant, the court on final decree may, unless the interests of the child require a different disposition, respect such contract and continue the custody and maintenance of the child in accordance therewith.    (p. 501).

5. SAME—*Custody of Children—Disposition.*
And having so disposed of the infant the court will not afterwards, except upon new facts and conditions shown, exercise its authority and jurisdiction to change the custody of the child. (p. 501).

Appeal from Circuit Court, Monongalia County.

Suit for divorce by George T. Buseman against Bessie P. Buseman and others. Decree of divorce and separation depriving plaintiff of care of his infant child, and he appeals.

*Affirmed.*

*C. William Cramer,* for appellant.
*Cox & Baker,* for appellees.

MILLER, PRESIDENT:

Upon a bill by husband against wife, filed July 18, 1913, for a divorce a mensa and for the custody of their infant daughter, based on the alleged desertion of plaintiff by defendant, the decree appealed from, pronounced February 23, 1916, found that defendant had deserted plaintiff in Monongalia County, on April 22, 1912, and it was thereby adjudged and decreed that the plaintiff be granted a divorce from bed and board from defendant, and that they be perpetually separated and protected in their persons and property and that the custody, care, control, education, and training of their infant daughter, Nellie Elizabeth Buseman, be and

remain with and that she be thereby committed to George Schaefer and Belle Schaefer, his wife, so long as the court should have the right to direct such custody, care, control, education, and training in all respects in accordance with the terms, conditions and provisions of the decree entered in the cause on March 26, 1914. There is no complaint of the decree of divorce and separation; the appeal is limited to that part of the decree which deprives plaintiff of the custody of his infant child and commits her to the custody and care of the Schaefers, in no way related by blood, but utter strangers to the parents of the child.

The pleadings and proof show wilful desertion of plaintiff by defendant, and we think the decree of separation prayed for must be interpreted as a finding of the essential facts of such wilful desertion or abandonment, without justifiable cause. At the time of her desertion defendant left the state and went to Cleveland, Ohio, taking her child with her, where she placed it in Jones Home for Friendless Children, located in that city, and she obtained employment as a manicurist in a barber shop there; and out of her earnings she says she contributed to that institution one dollar per week for the care and expenses of keeping the child. She remained in Cleveland with the child thus situated until July 11, 1913, when she and plaintiff entered into a written agreement whereby a divorce suit which she had brought in Cuyahoga County, Ohio, was to be dismissed by the court, and whereby it was also agreed that the daughter was to be taken from the children's home and placed by them in the care and custody of said Schaefers in Morgantown, West Virginia, who the agreement recites had agreed to maintain her and bring her up carefully in their own family; but the contract further provided that such custody and control of the child should continue only until the parties thereto should mutually agree otherwise or a different provision should be made by some court of competent jurisdiction on the application of either party, in which case it was stipulated that said agreement should not be held as prejudicing the right of either party to have the custody of said infant; and another provision thereof was that plaintiff would pay said Schaefers for

the board and care of the child not exceeding three dollars per week, and in addition furnish her such medical attendance and care as might be necessary, and each party was to have the right and privilege of visiting the child at all reasonable times, satisfactory to said Schaefers.

Pursuant to this agreement, both parties accompanying her, the child was brought to Morgantown and placed by them in the custody of Mr. and Mrs. Schaefer, where she remained but a few days before the institution of this suit by plaintiff on July 18, 1913, and at which time upon the presentation of his bill an injunction was awarded him restraining and inhibiting the defendant, until the further order of the court from interfering with him in the care, custody, control and education of said child, which was by said order also awarded him until the further order of the court.

Subsequently, on October 25, 1913, upon bill and exhibits and the separate answer of the defendant Mrs. Buseman and upon her motion, and with the consent of plaintiff, another interlocutory order was made in the cause whereby and so long as the court should have the right to control the same the custody, care, education and training of said infant was delegated to A. Ed. Lough and Jane B. Lough, his wife, and it was further ordered that said child should not be allowed to be or remain at the separate home of either of the parents, or at the place where either of them should make his or her home while she should remain in the care and custody of said Loughs, the costs of her maintenance and support to be borne and paid by plaintiff as the court might from time to time order, and for a breach of said order he was to be punishable as for a contempt of the court, and there was also a provision in the decree for visiting the child by both parents, and there were other provisions thereof not important in the disposition of the cause.

On March 26, 1914, upon the petition of said Loughs, they were relieved of their trust and so long as the right of the court to control the same continued, the custody, care, control, education and training of said child was thereby again committed to said Schaefers, with similar provisions also to

those contained in prior decrees, but with more stringent terms and with greater detail in barring her from the separate homes of her parents, in relation to parental visits, etc., and with provisions also respecting the duty and obligation of plaintiff to bear and pay the expenses of her care and keeping as aforesaid. The defendant consented to this order, but plaintiff being present did not consent thereto. It was this order to which the final decree appealed from referred as more particularly defining in all respects the terms, conditions and provisions respecting the custody, care, control, education and training of said infant. '

That the father, if living, and if he be dead, the mother, if not incapacitated or unfit, is the natural guardian of their infant children, and entitled to their custody, care, and control, is well settled law in this state, if not in most of the states of the Union. It was so at common law, and while the rigor of the ancient rule has been somewhat relaxed, and modified by statute, as well as by judicial decisions, depending on the interest of the child or children, the rule nevertheless prevails, and is to be applied unless for good cause shown in each particular case a different provision should be made. Our decisions from the beginning so holding, and controlling the disposition of the case at bar, are: *Rust v. Vanvacter,* 9 W. Va. 600; *State* v. *Reuff,* 29 W. Va. 751; *Green* v. *Campbell,* 35 W. Va. 698; *Cunningham* v. *Barnes,* 37 W. Va. 746; *Cariens* v. *Cariens,* 50 W. Va. 113; *Dawson* v. *Dawson,* 57 W. Va. 570.

Our statute, section 11, chapter 64 of the Code, relating to divorce, provides, among other things, that upon decreeing a divorce, whether from bonds of matrimony or from bed and board, the court may make such further decree as it shall deem expedient, concerning the estate and maintenance of the parties, or either of them, and the care, custody and maintenance of the minor children, and may determine *with which of the parents* the children, or any of them, may remain; and also may from time to time afterwards, *upon the petition of either of the parties,* revise or alter such decree concerning the care, custody, and maintenance of the children, and make a new decree concerning the same as the cir-

cumstances of the parents and the benefit of the children may require; and whether divorce be granted or not, if the parties be living separate and apart from each other, the court is given power thereby to make such order or decree concerning the care, custody and maintenance of the children or either or any of them, and may determine *with which of the parents* the children, or either or any of them may remain, as to the court may seem proper and the benefit of the child or children may require.

The discretion thus conferred upon the court by statute must of course be exercised with due regard to the natural and legal rights of the parents, if nothing has intervened justifying the denial of these rights; the court has no arbitrary authority to take from the parents their natural rights found in nature as well as in law and reason respecting the care, custody, and maintenance of their infant children; but our decisions cited hold with reference to and just regard for these natural and legal rights of parents that they may by voluntary contract with relatives or strangers, acted on by the other contracting party, surrender these rights, or by being or becoming financially, physically or morally unfit for the trust put it in the power of the court under the statute to take from them these rights, the interest of the child then becoming the pole of action to guide the court's descretion in the premises.

Although plaintiff at the time of the entry of the decree of March 26, 1914, again giving the care and custody of the infant to the Schaefers withheld his consent thereto, and on final decree pronounced February 26, 1916, he entered his objection to so much thereof as adjudged that the care and custody of the infant should remain with said Schaefers in accordance with the said former decrees, those decrees were both in accord with the contract in writing made between plaintiff and defendant on October 24, 1913. In addition to relinquishing their respective rights to the custody and control of their infant daughter and consenting that she might be disposed of as decreed by the court in each of said decrees, it was further agreed that the parties might with the consent of the court withdraw their pleadings and by amendments

eliminate certain charges made therein each against the other, and in the order of October 25, 1913, said amendments were made and certain affidavits filed on behalf of both parties were withdrawn in accordance with said contract.

That the court in the exercise of the discretion given by statute, has the power to respect if not to enforce such agreements, although made with strangers, always however with an eye singled to the interests of the infant child, is well settled by our decisions already referred to. In this case the contract, made under the circumstances disclosed, between plaintiff and defendant, with reference not only to the first but also to the final decree to be made, should be interpreted as a confession on the part of both parties of their unfitness in point of financial ability or otherwise to have the care and custody of their child. And the law of our decisions is, that having made disposition of infant children, the court will not afterwards reconsider the question, except upon some new or altered conditions or facts calling therefor.

Some courts however hold that a contract whereby a parent, the natural guardian of his infant children, seeks to escape the burden and responsibility of such children, is void upon grounds of public policy. Spencer on the Law of Domestic Relations, sec. 481, and cases cited, including *Hibbette* v. *Bains*, (Miss.), 51 L. R. A. 839. But Mr. Spencer says respecting such agreements they are not in all cases to be entirely ignored, particularly when they have been relied upon and the custody of the child has been transferred thereunder. See also Schouler on Domestic Relations, (5th ed.), Sec. 251. We think the concensus of the more recent and well considered cases is that while such contracts will not be given effect so as to relieve the parent of the obligation imposed upon him by the law of nature and by general law to care for and provide for his infant children, they may and will be given effect if made in the interest of the child, for the interest of the infant is controlling and not the provisions of the contract.

Wherefore, if hereafter the circumstances and conditions should change, and the interest of the child should demand it, we do not think either parent would be bound by the con-

tract, and the court with the power and jurisdiction conferred by statute may be properly invoked in modification of the decree giving custody of the child to the Schaefers. Indeed we find in the record another contract between the parties, dated September 25, 1915, just before the final decree of divorce from bed and board, which seems to have reserved the right, not inconsistent with the former contract, to acquire the control and custody of the child.

We find no error in the decree and it will be affirmed.

*Affirmed.*