# CHARLESTON.

STATE *ex rel.,* ELLA MAE COOKE *v.* FRANK WILLIAMS

(No. 6516)

Submitted May 16, 1929.    Decided May 28, 1929.

*Clarence W. Meadows* and *Carl C. Sanders,* for relator.
*J. Q. Hutchinson,* for respondent.

MAXWELL, JUDGE:

This is a controversy between a maternal grandmother and a father for the possession of two young children.

The respondent, Frank Williams, and Gertrude Cooke, daughter of relator, were married when they were high school students about eighteen years of age. They lived together as husband and wife for about two years when Gertrude returned with her nine months old child, Betty Jean, to the home of her mother, who then, as now, was the proprietress of a large rooming and boarding house in the mining town of MacAlpin in Raleigh county, sometimes referred to as the Club House. Some months thereafter a second child, Frances Marie, was born to the young mother. Later, in an uncontested suit, the wife was granted a divorce from bed and board from her husband on the ground of desertion; she was awarded the custody of the two children and alimony of $30.00 per month. Gertrude Williams died the 13th day

of March, 1928. In February, 1929, Frank Williams remarried. The two children remained with their grandmother, the relator, until March, 1929, when their father obtained their possession under the belief on the part of the grandmother that they were to visit at his home for only a few weeks. Upon his refusal to return them she went to his home, in his absence, and got them. Immediately upon ascertaining that she had taken the children he procured a warrant against her for kidnapping, and with the aid of two police officers regained possession of the children. She now seeks to obtain possession and control of them. She says that when the breach came between Williams and his first wife, he, both by express words and by conduct, surrendered and transferred to her his right to the care and custody of the children. This is denied by him.

Unfortunately, controversies of this sort usually develop an effort on the part of each contestant to establish the unfitness of the opposing contestant to be entrusted with the custody of the children who are the occasion of the contest. This case is no exception to the rule. A mass of testimony has been taken, but a careful examination of the same convinces us that both the relator and the respondent are good people, not faultless nor unerring, but suffering probably from their share of the frailties to which humanity is heir. It appears that each is sincerely interested in these two little children; that each is of suitable moral fitness to be entrusted with the responsibilities attendant upon the rearing of the children, and we have no doubt that either would make a conscientious effort to do the very best possible for the children.

When heartbreak and disillusionment had overcome the romance of the young couple, founded at an age when adolescence had scarcely ripened into maturity and at a time when the attachment of this boy and girl each for the other seemed to them to be the biggest thing in all the world and hard facts and realities had no place on the horizon, the relator stood ready to succor the young mother and her babies. Her house was truly a refuge. The young husband, too, was welcome there even after the daughter had obtained a divorce from him. The grandmother has done the best she could;

she has done well. She loves the children of her own dead girl as though she herself had given them birth, and it is not to be wondered that she seeks to regain their possession. The father too must be considered as entertaining a normal man's affection for his offspring. As a general rule, a parent is entitled to the custody of his or her children as against all the world. But this rule does not obtain where the parent has transferred or abandoned the custody of children to another, and it does not appear that the welfare of the children requires that their custody be reinstated in the parent. In this case, as in all similar cases, the primary consideration is the welfare of the children. *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738. Courts consider the welfare of the children rather than the technical rights of either party. *Connor* v. *Harris,* 100 W. Va. 313. The two little girls involved in this matter have been well and faithfully cared for by their grandmother. It is reasonable to assume that she will continue to give to them the same sort of care that they have heretofore received at her hands. There would seem to be little risk on that score. On the other hand, if the right of the father to their custody be recognized, the children will be committed to the care of a young step-mother, now in her twenty-first year. Presumably she is an estimable young woman. Certainly nothing appears in the record derogatory of her. She says she is willing to take the children and rear them as her husband desires, but the experience and observation of life teach us that such an arrangement is fraught with grave possibilities of discord and disaster. It would seem that as between these two women the little girls will probably have less of uncertainty ahead if the grandmother who has done so nobly by them thus far is permitted to care for them further as they grow and develop into young womanhood. And then her claim to the children is buttressed in the fact, testified to by both the grandmother and one of her daughters, that the young mother shortly before her decease requested the grandmother to keep the children and that she promised to do so. Though the MacAlpin Club House is not an ideal place for the rearing

of children we cannot hold that it is an unfit place therefor as urged upon us by respondent.

Frank Williams does not come into this matter in an entirely favorable light. He did not deny his first wife's allegation against him of desertion, but, by default, permitted her to obtain a divorce from bed and board on that ground and to be awarded the custody of the children. This seems to have been satisfactory to him. And he was very willing through several years for the children to remain in the home of the grandmother, and for the responsibility of their care to be there assumed. At the time of the death of his wife he was in arrears in the payment of alimony, he says only to the extent of one month's installment, but the grandmother says that it was for several months' installments. He failed to provide a home for his first wife, and says that he permitted the children to remain at the grandmother's because he had no place else to take them. He does not have a home of his own now, and it appears from his own testimony that at this time he is "hard up" financially. These facts do not afford favorable background for his present desire to assume the responsibility for the welfare of these children. In the *Palmer-Postlethwaite* case, *supra,* wherein there was a controversy between a father and the maternal grandmother for the custody of an eleven year old boy, the child was awarded to the father. But an examination of the opinion in that case and of JUDGE LIVELY's concurring note will disclose a very different situation from that with which we are here confronted. There, the father had been awarded the custody of the child in a divorce suit between him and the mother of the child. The child was then placed by him in the care of the grandmother at her boarding house and she charged for keeping the boy, and in a suit by her against the father she set out in detail the amount of her charges for services and board. And again, the father was shown by the evidence to be a man of substantial means and his second wife, whom the child had known for several years, was a woman of mature years. The case at bar belongs in a different classification. The following statement of the law is applicable: "When a father has committed the custody of his infant child to

another person by agreement to be maintained and cared for, which agreement has been acted on by such other person, such agreement will bind the parent, and prevent his reclaiming custody of the child, unless he can show that a change of custody will plainly promote the child's welfare, moral or physical.'' *Fletcher* v. *Hickman*, 50 W. Va. 244. See also *State ex rel. Coffield* v. *Bonar*, 75 W. Va. 332, and *Odlasek* v. *Odlasek*, 98 W. Va. 357. We think that the circumstances strongly support the contention of the grandmother that the custody of these children was committed to her not only by their mother but by the respondent as well. Such having been the arrangement among these people, and the grandmother having done her full duty by the children, it is in no wise evident that a change of custody from the grandmother to the father "will plainly promote" the welfare of the children.

The custody of the children is awarded to the grandmother, the relator.

*Writ awarded.*