DELORIS JEAN HOY

*v.*

PAUL DOOLEY, *et al.*

(10964)

Submitted September 23, 1958. Decided December 2, 1958.

*J. G. F. Johnson, J. B. Heilmann,* for plaintiff in error.

*L. Alvin Hunt, Somerville, Hyer & Littlepage, Samuel D. Littlepage,* for defendants in error.

GIVEN, JUDGE:

Plaintiff, Deloris Jean Hoy, instituted an action of habeas corpus in the Circuit Court of Jackson County, against defendants Paul Dooley and Ludie Ann Dooley, for the purpose of obtaining custody from defendants of an infant, Penny Lou Hoy, child of petitioner and James Robert Hoy. After hearing evidence on the petition and return, the trial court held "that the petitioner has not made out a prima facie case", and adjudged "that the said child * * * is not illegally restrained * * *". To the final order, this Court awarded a writ of error.

The petitioner, mother of Penny Lou Hoy, at the time of the birth of the child, was a resident of Columbus, Ohio. She testified that her husband deserted her about

one month after the child was conceived, and that she had not heard from her husband since the desertion. Shortly before the birth of the child, the mother was brought in contact with Duane Roscoe Herdman and Phala Herdman, husband and wife, who also resided in Columbus and who, by marriage, are related to the mother. Because of financial circumstances, the mother made necessary arrangements with the University Hospital, at Columbus, for the delivery of the child. The hospital charges, or at least part thereof, were to be paid by a welfare agency of the State of Ohio. The child was born April 6, 1956. The Herdmans visited the mother at the hospital and, about three days after the birth of the child the mother and child were removed from the hospital to the home of the Herdmans. The mother remained in that home until the fourteenth day of April, 1956, when she left, leaving the child with the Herdmans. The child remained at the Herdman home until about November 10, 1956, when it was taken by Mrs. Herdman to the home of defendants, the husband of Mrs. Herdman having previously entered the armed forces of the United States. Mr. Dooley, one of the defendants, is the father of Mrs. Herdman, the other defendant being her stepmother. The child, since the last mentioned date, has been in the home of defendants.

Sometime in February, 1957, the mother was informed that the child had been, by Mrs. Herdman, placed in the home of defendants, who reside in West Virginia, and, about April 3, 1957, she went to the home of defendants for the alleged purpose of obtaining custody of the child. Having then been denied such custody, she returned about three weeks later, demanding such custody, which was again refused by defendants, and was then informed by defendants that they would not deliver custody of the child to her unless compelled to do so. The mother testified to the effect that she was unable, because of financial circumstances, to request custody from defendants before the April visit.

On August 21, 1957, defendants filed their petition in

the Juvenile Court of Jackson County, praying adoption of Penny Lou Hoy. The mother of the child filed an answer to the petition, denying that she had, in any manner, relinquished custody or control of the child or had abandoned it, praying that the adoption be denied, and that the petition be dismissed. After hearing evidence in support of the petition and in support of the answer, the court adjudged "that the petitioners failed, in their evidence taken before this court, to show abandonment of Penny Lou Hoy by her mother, Deloris Jean Hoy, and the relief asked for in said petition is hereby denied and said petition is hereby dismissed at the costs of the petitioners."

The record of the adoption proceeding, including the evidence adduced therein, is made part of the record of the instant proceeding. Petitioner in the instant proceeding, after having introduced her evidence, "rested her case", whereupon counsel for defendants, without introducing any evidence other than that adduced in the adoption proceeding, "moved the court for judgment on the record, and to refuse the petitioner the writ of habeas corpus sought in her petition", and the court "upon the evidence introduced in this habeas corpus proceeding, and as well on the evidence introduced in the former adoption proceeding", adjudged that the "petitioner has not made out a prima facie case and it is hereby ordered that said child, Penny Lou Hoy, named in said petition is not illegally restrained of her liberty and the writ of habeas corpus sought is hereby denied."

The Hoys have one other child, Jeanie Sue, born November 12, 1954. Mrs. Hoy is about twenty five years of age. She works as a waitress at an eating establishment, earns about thirty dollars per week, and lives in a "rooming house", sharing a room with another girl. She maintains the oldest child in a home "about eight blocks" from where she rooms. In her testimony, she stated that in the event custody of Penny Lou is granted her, she will "put her where my other daughter is at". In her petition in the instant case she says that she "is willing

that said child be turned over to her aunt and uncle, Audrey McClure and L. H. McClure, who are able, financially, morally and otherwise, to educate and care for said child, and who are willing to take custody of said child with adoption in view * * *". The McClures filed their petition in the adoption proceeding, praying that the care and custody of the child be granted to them.

There appears to be no question that Mrs. Hoy contemplated the adoption of Penny Lou before and at the time she was in the hospital. It also seems certain that she contemplated, and agreed, that Mr. and Mrs. Herdman might, at least, under certain circumstances, adopt the child. She testified to the effect that she "was planning on adopting her out before she was born because I didn't think, my husband leaving me, I could provide for both of them", and that when she left the Herdman home, she left "with the understanding that if they would provide for her, take good care of her, was good to her, — if so, could be, I would let them adopt her if it was okay with the State", and in attempting to explain or justify her failure to visit or see the child for long periods of time while it was in the Herdman home, testified that she did so "Because I had left her there, was going to let them adopt her, if they could. I didn't want to go back and see it so I could get attached to it." Other pertinent facts will be alluded to in the discussion of the several questions.

In Code, 44-10-7, dealing in part with custody of minor children, we find this provision: "* * * But the father or mother of any minor child or children shall be entitled to the custody of the person of such child or children, and to the care of his or their education. If living together, the father and mother shall be the joint guardians of the person of their minor child or children, with equal powers, rights and duties in respect to the custody, control, services, earnings, and care of the education of such minor child or children; and neither the father nor the mother shall have any right paramount to that of the other in respect to such custody, control, services or

earnings, and care of the education of such minor child or children * * *". Code, 48-4-1, as amended, dealing with adoption of minor children, provides that before any such adoption be granted, excepting in certain cases not here material, "* * * the written consent, duly acknowledged, of the parent or parents, if living * * * shall be obtained * * *". These provisions clearly recognize the universally accepted principles of natural law to the effect that parents, usually, at least, are entitled to the custody of their offspring, though such right may be abandoned or forfeited, and, in certain circumstances, may be transferred by agreement.

In *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221, we held: "3. In a proceeding involving the custody of an infant the right of a parent to the custody of his child, being founded in nature and wisdom and declared by statute, will be respected unless transferred or abandoned; but the court is in no case bound to deliver the child into the custody of any claimant and may permit it to remain in such custody as its welfare at the time appears to require."

In *Hurley* v. *Hurley,* 71 W. Va. 269, 76 S. E. 438, we held: "2. The father is legally entitled to the custody of his infant child, if fit for the trust, and the same should not be denied him unless the child's welfare or other considerations clearly outweigh his legal right." In the instant case, the father having deserted the plaintiff and abandoned the child, insofar as the present record is concerned, only the right of the mother to the custody of the child is involved.

In 14 M.J., Parent and Child, Section 7, it is stated: "The rights of the parent to the custody of an infant child are not absolute, to be accorded under all circumstances. They may be denied if it appears to the court that the parent is unfit for the trust. So when asked to restore the custody of an infant child, the court is not bound by any mere legal right of parent or guardian. But such rights are to be respected, being founded in

nature and wisdom, unless they have been transferred or abandoned. So the custody of the minor will be assigned to the person having the right, unless it appears he is an improper person to take it." See *Stout* v. *Massie,* 140 W. Va. 731, 88 S. E. 2d 51; *Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E. 2d 11; *State ex rel Bennett* v. *Anderson,* 129 W. Va. 671, 41 S. E. 2d 241; *Pierce* v. *Jeffries,* 103 W. Va. 410, 137 S. E. 651, 51 A.L.R. 1502; *Fletcher* v. *Hickman,* 50 W. Va. 244, 40 S. E. 371; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843.

Though the record clearly establishes that the mother intended to permit the Herdmans to adopt the child if certain conditions were complied with and, in contemplation of such adoption, left the child at the Herdman home for a considerable period of time, it seems clear that she made no agreement, had no understanding, to the effect that the Herdmans, in the event of failure to adopt, could deliver such custody to any other person, even with the approval of a court having jurisdiction thereof. We need not now decide, and do not indicate a belief, as to whether such an agreement or understanding could be enforced. It is enough for present purposes to point out that no such contract or understanding was even attempted to be proved. Neither is there any proof establishing that any welfare agency of either Ohio or this State authorized, or attempted to authorize, the transfer of such custody from the Herdmans to defendants. Since the mother, within a reasonable time in the circumstances of this case, after learning of the abandonment by the Herdmans of any intention to adopt the child, and the removal of such custody to defendants, attempted to regain such custody, it can hardly be contended that defendants have any right to such custody superior to that of the mother, by contract, understanding, or otherwise. The finding of the trial court on this issue is in accord. It stated, in an opinion filed: "* * * Even consent to the Herdmans to adopt the child given by the mother could not be construed as consent to the petitioners".

As pointed out by the authorities cited, a court, in such a proceeding as the instant one, is not always required to restore custody of an infant child to its parents, but such custody may be denied the parents if unfit for the trust. The court must always look to the welfare of the child, yet may not disregard the legal rights of the natural parents. In the instant case, however, does the evidence establish that the mother is not "fit for the trust", the custody of her infant child? See *Hurley* v. *Hurley, supra.* We have concluded that the evidence definitely and clearly fails to establish any fact or facts which render her unfit, or facts of sufficient force to permit the denial of her natural and legal rights as to such custody.

In reaching the conclusion, we have not failed to consider the evidence relating to the intention of the mother to permit the Herdmans to adopt the child. Such intent, however, arose under such then existing circumstances, detailed above, as to make any other alternative appear impossible to the mother, considering the welfare of the child. Even in the arrangement with the Herdmans, a concern for the welfare of the child was demonstrated in her precautions as to conditions imposed. And there is not the least indication that had the Herdmans not abandoned their intention of adoption, that the mother would not have complied, insofar as possible, with that understanding. Her failure to visit the child for long periods of time, while it was in the Herdman home, is easily attributed to an effort on her part to adjust her own feelings resulting from the loss of the child, which then appeared certain, as she testified. While there is some evidence indicating that the mother "whipped" the child when it was only a few days old, she makes emphatic denial of any such conduct. We think such a charge not fairly established. The contention is also advanced that the mother has neglected her oldest child and is not financially able to support either child. There is no evidence, however, that the mother has wilfully failed to use her limited means and efforts to provide

for the oldest child. Neither is there any evidence establishing, or even strongly indicating, any evil or immoral act or practice on the part of the mother which would render her not "fit for the trust", by nature and legal right belonging to her.

In *Pierce* v. *Jeffries,* 103 W. Va. 410, 415, 137 S. E. 651, 51 A.L.R. 1502, the Court said: "There is no evidence that the relator is unfit to have the custody of her baby. It is true that the relator may have erred prior to the birth of the child. She may have trusted too much or loved too well. But, be that as it may, there is not a scintilla of evidence in the record as to any subsequent misconduct on her part which would convict her of being an unfit person to have the custody of her boy. In order to separate a child from its parent on the ground of the latter's unfitness, there must be cogent and convincing proof of such fact * * *".

Defendants rely strongly on *Stout* v. *Massie,* 140 W. Va. 731, 88 S. E. 2d 51. We believe, however, the case supports the conclusions reached herein. In that case, facts were established which justified, perhaps compelled, a finding of the trial court to the effect that the application of the "polar star principle" required that the custody of the child involved be left with persons other than its mother, certain facts, detailed in the opinion, indicating, at least, probable unfitness of the mother. Moreover, in that case, an order permitting adoption by the parties then having custody of the child had been entered previous to the commencement of the proceeding wherein custody was sought by the mother.

The conclusions reached require that the judgment appealed from be reversed, and that the case be remanded to the Circuit Court of Jackson County, with directions to grant the writ of habeas corpus as prayed for, requiring the defendants to immediately surrender custody of the infant child, Penny Lou Hoy, to the plaintiff, Deloris Jean Hoy.

*Reversed;*
*remanded with directions.*