LILLIAN NELSON

*v.*

DEPARTMENT OF PUBLIC ASSISTANCE OF
RALEIGH COUNTY, WEST VIRGINIA

(No. 12322)

Submitted September 16, 1964.    Decided December 8, 1964.

HAYMOND, JUDGE, dissenting.

*Thornhill, Thornhill & Kennedy, W. A. Thornhill, III,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *Frank Ellison,* Assistant Attorney General, for defendant in error.

BERRY, JUDGE:

This habeas corpus proceeding was instituted in the Circuit Court of Raleigh County, West Virginia, by the petitioner, Lillian Nelson, against the Department of Public Assistance of Raleigh County, West Virginia, to obtain the custody of her illegitimate child which was voluntarily relinquished to the West Virginia Department of Welfare, Division of Child Welfare of West Virginia. The Circuit Court, after hearing had thereon, found that it was for the best interest and welfare of the child in question to deny the relief prayed for by petitioner and on December 5, 1963 discharged the writ. Upon petition to this Court a writ of error was granted on March 23, 1964. The case was submitted on arguments and briefs at the September 1964 Term of this Court.

The petitioner lived with her mother and stepfather near Richlands, Virginia until about May, 1962, at which time she found that she had become pregnant and left their home. She had been married in 1955 when she was about 19 years of age but had been divorced. The petitioner told her mother that she was going to Florida when she left home, and although she did go to Florida she was dissatisfied and returned to West Virginia. She did not write to her mother, although she did call her periodically, leading her mother to believe that she was in Florida all this time.

The child was born in a Beckley hospital on December 1, 1962. After the birth of her child her health was not good, and she discussed her situation with a social worker employed at the hospital. The social worker, after talking with the petitioner regarding her situation, sent for Katherine Ann Ross, a Child Welfare Worker for the West Virginia Department of Welfare, Child Welfare Division, who was stationed at the office of the Raleigh County Department of Public Assistance in Beckley, West Virginia. The welfare worker came to the hospital and discussed the matter with the petitioner in detail, advising her that, if desired, she could relieve herself of the financial burden and all matters in connection with the rearing of her child by relinquishing her parental rights to the State of West Virginia. A blank

form of relinquishment was left with the petitioner overnight for her to read and weigh carefully. The welfare worker apparently understood from her conversation with the petitioner that she had decided to give up the custody of her baby, because the next day the worker returned to the hospital with a relinquishment form completed and ready for signature, which was executed by the petitioner afterwards and acknowledged before a notary public after petitioner stated that was definitely what she wanted to do. The relinquishment was executed on December 11, 1962.

After relinquishing all of her rights to the custody of her child petitioner left the hospital in Beckley and obtained a job as a waitress in a night club called the "Red Barn" near Bluefield, West Virginia. She apparently visited her mother and stepfather occasionally during the time she was employed at that place. It appears that during this time the petitioner told Mary Buckles, a friend of hers, about the birth of her child. She had known Mrs. Buckles during the time she was employed at a motel and restaurant near Cedar Bluff, Virginia. Later on she told her stepfather about the child after which time they conveyed the information to her mother. Her mother and stepfather advised her that they would help her care for the child if she could get it back.

Some two months after the child had been relinquished to the State Department of Child Welfare an attempt was made by the petitioner, her mother and her stepfather to get the child back but by that time the child had been placed in a foster home where it still remains. No attempt was made to have the child adopted after the petitioner indicated that she wanted to obtain custody of it. At the time the request was made of the child welfare worker to return the child to the petitioner, it appears that the welfare worker told her that it might be possible, but not likely that such return could be made, and that in any event it would have to be determined by a higher authority.

In September, 1963, the petitioner was notified by the child welfare worker that the decision of the State Department of Child Welfare, as a result of a review had of the case, was that the custody of her child would not be returned

to her. After being so advised, the petitioner employed an attorney and this habeas corpus proceeding was instituted on September 23, 1963, after which the Attorney General, on behalf of the State of West Virginia, filed an answer denying that the change of custody would be for the welfare of the child and also demurred to the petition.

It is contended by the petitioner that her delay in taking legal action was caused by misleading statements on the part of the welfare worker which caused her to believe that she would get the child back. However, this contention is denied by the child welfare worker. It is also contended by the petitioner that she changed her job as a waitress at the "Red Barn" and obtained a position as bookkeeper near her mother's home in order to get the baby back and that her stepfather moved from the home in Cedar Bluff near Richlands, Virginia to North Tazewell, Virginia, where he purchased a house which they thought was more suitable for the child. The house in North Tazewell has five rooms and the petitioner's mother, stepfather and sister live in it at the present time. It is the contention of the petitioner that if she obtains custody of the child she will live with her parents in North Tazewell in order that her mother could care for the child while she works.

The evidence indicates, however, that her stepfather had been planning to purchase the home in question in North Tazewell for quite some time before he knew about the birth of petitioner's child, for the reason that it would be closer and more convenient to his work. The evidence in this case indicates and the trial court so stated that there was nothing against the petitioner except that the child was born out of wedlock and of course her former employment was not of the highest type. It also appears from the evidence that her mother and stepfather are decent, honest people. The evidence of the respondent on the other hand was that in situations similar to the one at bar it would not be for the best interest and welfare of the child to move it and that it would also result in an embarrassing situation in the location to which it would be taken by the unwed mother. It was also admitted that if the petitioner had not voluntarily relin-

quished the custody of her child that the mere fact that it was illegitimate would not constitute any reason for taking the child from her as long as it was not placed in the catagory of a neglected child as defined in Code, 49-1-3, as amended. See *Pierce* v. *Jefferies,* 103 W. Va. 410, 137 S. E. 651, 51 A.L.R. 1502, and *State ex rel. Bennett* v. *Anderson,* 129 W. Va. 671, 41 S. E. 2d 241. The evidence also indicates that in cases where a child is to be placed for adoption the State Department of Welfare, through a selective process, matches the child's background with that of prospective adoptive parents who have similar characteristics and adequate means of caring for the child.

There is very little conflict in the facts in the case at bar and the only question involved is whether the mother of an illegitimate child who permanently relinquishes, with full awareness of her actions, all of her rights to such child may then change her mind after several weeks or months and again obtain custody of the child.

It is true that the welfare of the child is the polar star by which courts are guided in cases where the custody of an infant child is contested. *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738; *State ex rel. Cook* v. *Williams,* 107 W. Va. 450, 148 S. E. 488; *Reynolds* v. *Reynolds,* 109 W. Va. 513, 155 S. E. 652; *Frame* v. *Wehn,* 120 W. Va. 208, 197 S. E. 524. However, in any case where a parent has relinquished his or her right to a child the burden is upon such parent to show that it will be for the best interest and welfare of the child that the custody be given back to the parent. *Bell* v. *Eicholtz,* 132 W. Va. 747, 53 S. E. 2d 627; *Lucyk* v. *Brawner et al.,* 144 W. Va. 690, 110 S. E. 2d 739.

The leading case dealing with the matter involved in the instant case is *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843, which was decided in 1891. It was held in the sixth point of the syllabus in the *Green* case that: "When a parent has transferred to another the custody of his infant child by fair agreement which has been acted on by such other person, to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless he can show that a change of cus-

tody will materially promote his child's welfare, moral or physical." The agreement in the *Green* case was an oral agreement and of course, a written agreement makes for a much stronger case. This principle has been followed by this Court in numerous cases... *Cunningham* v. *Barnes et al.,* 37 W. Va. 746, 17 S. E. 308; *Fletcher* v. *Hickman,* 50 W. Va. 244, 40 S. E. 371, 55 L.R.A. 896, 88 Am. St. Rep. 862; *State ex rel. Coffield* v. *Bonar et als.,* 75 W. Va. 332, 83 S. E. 991; *Grass* v. *McMullen,* 86 W. Va. 216, 103 S. E. 51; *Odlasek et al.* v. *Odlasek,* 98 W. Va. 357, 127 S. E. 59; *State ex rel. Palmer* v. *Postlethwaite, supra; Beaumont* v. *Beaumont,* 106 W. Va. 622, 146 S. E. 618; *Frame* v. *Wehn, supra; State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221.

When at the time a relinquishment is executed and it is shown that it was the intent on the part of the natural parent to give up permanently the custody of a child and that it would not benefit the welfare of the child to be returned to the parent the natural parent cannot regain the custody of the child. *Bell* v. *Eicholtz, supra; Lipscomb* v. *Joplin, supra; State ex rel. Harmon* v. *Utterback,* 144 W. Va. 419, 108 S. E. 2d 521; *Lucyk* v. *Brawner, supra.* It was held in the second point of the syllabus in the *Harmon* case that: "A parent may, by fair agreement or otherwise, transfer or relinquish the custody of his or her infant child to another person and by such action make the custody of the child by such other person valid and legal."

The trial court heard and observed the witnesses, and from all of the evidence in the case, after careful consideration, it was the decision of the trial court that the best interest of the child would be served by allowing it to remain in the custody of the State Welfare Department, Division of Child Welfare, State of West Virginia.

It cannot be said from the evidence in this case, as disclosed by the record, that the trial court abused its discretion in the disposition of this case and therefore the decision of the trial court should be upheld. *Hammond* v. *Dept. of Public Assistance of Doddridge Co.,* 142 W. Va. 208, 95 S. E. 2d 345; *Lucyk* v. *Brawner, supra.*

It should be noted that this proceeding was instituted against the Department of Public Assistance of Raleigh County, West Virginia, as respondent, but the record clearly indicates that the West Virginia Department of Welfare, Division of Child Welfare for the State of West Virginia was given the custody of the child in question by its mother and it still has the custody of the child. Therefore, it would appear that the proper party was not proceeded against in order to obtain the custody of the child. See Code, 49-1-5, subsections 1 and 4, as amended, and Code, 9-1-2, as amended. However, this question was not raised by the attorney for the respondent in the pleadings or in its brief. It was only mentioned during the argument of the case and then by the petitioner's attorney.

For the reasons stated herein, the judgment of the Circuit Court of Raleigh County is affirmed.

*Affirmed.*

HAYMOND, PRESIDENT, dissenting:

Though I do not disagree with the principles of law stated in both points of the syllabus, I challenge their application to the facts of this case, which in the main are undisputed, and I dissent from the decision of the majority of the Court in affirming the final judgment of the Circuit Court of Raleigh County which refuses to award the custody of the infant daughter of the petitioner to her and permits the West Virginia Department of Welfare to retain the custody of the child which, until it finds a permanent home for the child which as yet it has not done although it has had possession of the child and has placed it in a foster home since it obtained such possession in December 1962, is necessarily of a temporary nature and renders the permanent disposition of the child utterly uncertain and its status entirely unsatisfactory and undesirable with respect to the welfare of the child.

It clearly appears from the facts which are adequately stated in the majority opinion that the idea of relinquishing the baby daughter of the petitioner was suggested by a social worker who visited the petitioner during the period December 1, 1962, when the child was born at the Beckley Hospital and

December 11, 1962, when the signed relinquishment was executed and that during that period a representative of the department urged the petitioner, whose health was then not good and who was beset by worry and doubt as to whether the condition of her health would permit her to keep and care for the child, to relinquish her parental rights by telling her that she could relieve herself of the financial burden and all matters in connection with the rearing of her child by such action and who also promptly furnished her with a form of relinquishment and made prompt provision for its execution. It also clearly appears from the undisputed facts that the petitioner was reluctant to inform her stepfather and her mother about the birth of the child and did not do so until some time after she had left the hospital about December 15, 1962. After she informed them of the birth of the child they agreed to help her to care for it if she could regain its possession and they made adequate provision to assist her in caring for the child and, at least partly for that purpose, moved from their former home in Cedar Bluff, Virginia, to North Tazewell, Virginia, where they own and maintain a five-room home which is occupied by the petitioner's mother, stepfather and sister and in which the petitioner would be permitted to live with her child, which would be cared for by the petitioner and by her mother when the petitioner would be absent at work. It also appears that the stepfather has an annual income of approximately $6,000.00, that he and the mother of the petitioner are decent, honest and respectable people and that the petitioner is now a person of good moral character and is employed as a bookkeeper. The evidence also shows that the department has had possession of this child of tender years since December 1962; that from a period beginning about two months after the department received possession of the child and continuing until September 1963, when the petitioner was notified that it would not return the child to her, the petitioner undertook to negotiate with the department for the return of the child and after being told that the department would refuse to return the child to her she instituted this habeas corpus proceeding on September 23, 1963. It is clear from the evidence that the department has not

placed the child in a permanent home but has provided for its temporary possession in a foster home, the identity, location and character of which are not disclosed by the evidence.

Notwithstanding the foregoing facts that the stepfather and the mother of the petitioner are persons of good moral character who could and would provide a suitable home for the petitioner and her child, that the petitioner is a person of good moral character, and that the child was still in the temporary custody and control of the department and its future permanent home had not been determined, the circuit court found that the best interest of the child would be served by allowing it to remain in the custody of the department. In making such finding it is apparent that the court felt that there was merit in the contention of the defendant that because the child was born out of wedlock an embarrassing situation would result if its possession should be given to its unwed mother, a factor which, in my judgment, is of slight, if any, importance in connection with the permanent welfare of the child inasmuch as the petitioner since the birth of her child has been guilty of no moral misconduct and has become a person of good moral character. As to her moral character and fitness this quotation from the opinion in *Pierce* v. *Jeffries,* 103 W. Va. 410, 137 S. E. 651, 51 A.L.R. 1502, seems to be applicable to the petitioner: "There is no evidence that the relator is unfit to have the custody of her baby. It is true that the relator may have erred prior to the birth of her child. She may have trusted too much or loved too well. But, be that as it may, there is not a scintilla of evidence in the record as to any subsequent misconduct on her part which would convict her of being an unfit person to have the custody of her boy. In order to separate a child from its parent on the ground of the latter's unfitness, there must be cogent and convincing proof of such fact."

From the foregoing evidence I am firmly convinced that the welfare of the child, which is the polar star by which its custody should be determined, would be materially promoted by awarding its custody to the petitioner, its natural parent, instead of requiring it to remain in the temporary

custody of the department until it can find a permanent home for the child, the identity, location and character of which are entirely unknown and can not presently be definitely ascertained or determined. In other words the permanent possession of the child by its mother, the petitioner, would permit the child to live in the custody of its natural parent in a suitable and respectable home, occupied by her and her mother, stepfather and sister, instead of a foster home for an indefinite period and eventually in a permanent home, the identity, location and character of which are presently undertermined and can not at this time be determined. In that situation it is clear to me that in refusing to award the custody of the child to its natural mother, the petitioner, the circuit court abused its discretion in that its finding that the best interest of the child would be served by allowing it to remain in the custody of the department is clearly wrong and contrary to the undisputed evidence in the case.

Section 7, Article 10, Chapter 44, Code, 1931, provides, in part, that the father and the mother of any minor child shall, with equal powers, rights and duties, be entitled to the custody of the person of such child and to the care of its education. This Court has held in many cases that the right of a parent to the custody of his or her child, though not absolute, is founded on natural law and arises because the child is his or hers to care for and rear. *Whiteman* v. *Robinson,* 145 W. Va. 685, 116 S. E. 2d 691; *Hoy* v. *Dooley,* 144 W. Va. 64, 105 S. E. 2d 877; *Stout* v. *Massie,* 140 W. Va. 731, 88 S. E. 2d 51; *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E. 2d 11; *State ex rel. Bennett* v. *Anderson,* 129 W. Va. 671, 41 S. E. 2d 241; *Straughan* v. *Straughan,* 115 W. Va. 639, 177 S. E. 771; *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738; *Connor* v. *Harris,* 100 W. Va. 313, 130 S. E. 281; *Fletcher* v. *Hickman,* 50 W. Va. 244, 40 S. E. 371, 55 L.R.A. 896, 88 Am. St. Rep. 862; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843; *Rust* v. *Vanvacter,* 9 W. Va. 600. This right of a parent will be respected when it has not been transferred or abandoned. *Hoy* v. *Dooley,* 144 W. Va. 64, 105 S. E. 2d 877; *Settle* v. *Settle,* 117

W. Va. 476, 185 S. E. 859; *Straughan* v. *Straughan,* 115 W. Va. 639, 177 S. E. 771; *Pierce* v. *Jeffries,* 103 W. Va. 410, 137 S. E. 651, 51 A.L.R. 1502; *Buseman* v. *Buseman,* 83 W. Va. 496, 98 S. E. 574; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57. Even when a parent has transferred, relinquished or surrendered the custody of his or her child to a third person and subsequently demands the return of the child the action of the court in determining whether the custody of the child shall remain in such third person or whether the child shall be returned to its parent depends upon which course will promote the welfare and best interest of the child and though the parent will not be permitted to reclaim the custody of the child unless the parent shows that such change of custody will materially promote the moral and physical welfare of the child, *Whiteman* v. *Robinson,* 145 W. Va. 685, 116 S. E. 2d 691, and the many cases cited in the opinion in that case, the Court should permit the parent to reclaim the custody of the child when it appears, as it clearly does in the case at bar, that such change will materially promote the moral and physical welfare of the child.

Though the circumstances under which the relinquishment of the child was obtained by the representative of the department do not render it invalid, yet it is manifest to me, at least, that the relinquishment shows that the petitioner thought that she was unable properly to care for her child does not reflect the actual and considered wish of the petitioner to relinquish permanently the custody of her child. The mere statement of the undisputed facts disclosed by the evidence compels the conclusion that in finding that it was for the best interest of the child to permit it to remain with the department and in entering judgment to that effect the circuit court was clearly wrong and the rendition of such judgment constituted a clear abuse of discretion. The evidence does not disclose the present whereabouts of the child or the kind of care and attention which it is receiving and no representative of the department knows the character and nature of its future home or what the department will do with the child or if any representative of the department

possesses such knowledge it is not disclosed by any evidence in the record. Certainly there is nothing in the evidence to show that the continued possession of the child by the department can be said to be as beneficial or promotive of the welfare of the child as the presently available home for the child and the parental care and affection which it would receive if its custody had been awarded to its natural mother, the petitioner. When the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is clearly wrong, such finding will be reversed and set aside upon appellate review. *J. and G. Construction Company* v. *Freeport Coal Company*, 147 W. Va. 563, 129 S. E. 2d 834; *Huntington Development and Gas Company* v. *Topping*, 115 W. Va. 364, 176 S. E. 424; *McKown* v. *Citizens State Bank of Ripley*, 91 W. Va. 716, 114 S. E. 271. Considering the practical aspects of this case, it is true that this then worried and distressed young woman executed a relinquishment of the custody of her baby but it is also, I believe, equally true that she did not fully realize what she was doing or the permanent consequences of her ill-considered and mistaken act. Accordingly I see no sound reason for punishing her permanently by denying her the custody of her child. If the department had placed the custody of the child suitably and permanently and personal attachment or affectionate relations had been formed which should not be disturbed, I would be less reluctant to agree with the ruling of the circuit court. But no such permanent custody and affectionate relationship now exist or will likely exist in the reasonably near future, and in my judgment, as a matter of fairness and humanity and, indeed, as a matter of law in the proper exercise of a sound judicial discretion, the petitioner should be given the custody of her baby daughter.

As it is my considered opinion that the moral and physical welfare of this child of tender years would be materially promoted by awarding its custody to the petitioner, its natural mother, instead of leaving it, with its uncertain future, under the control of the department, a bureaucratic agency of the government whose representatives obviously do not entertain the same affection and solicitude for its welfare

as its natural mother, who is fond of the child and earnestly desires to have its permanent custody, I would reverse the judgment of the Circuit Court of Raleigh County and award such custody to the petitioner.