R. R. STAPLER *v.* M. LOUISE LEAMONS *et al.*

(No. 5615)

Submitted March 9, 1926.    Decided March 23, 1926.

DIVORCE—*Foreign Decree or Order Awarding Custody of Child in Divorce Case Held Not Res Judicata in Subsequent Proceeding in State Involving Custody, Where There Has Been Change in Conditions Since Rendition of Foreign Judgment Rendering Modification Desirable (Code, C. 130, §19).*

A foreign decree or order awarding the custody of a minor child in a divorce suit is not *res judicata* in a subsequent proceeding in this State, involving the custody of the infant, where there has been such change in the conditions since the rendition of the foreign judgment as to render its modification desirable for the welfare and protection of the child.

HATCHER, JUDGE, absent.

(Divorce, 19 C. J. § 831.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Original application for habeas corpus by R. R. Stapler against M. Louise Leamons and another to gain custody of his infant child, Edward Russell Stapler.

*Writ refused.*

*Morton, Mohler & Peters,* for petitioner.
*England & Ritchie* and *W. C. McKee,* for respondents.

LITZ, PRESIDENT:

The petitioner R. R. Stapler seeks by writ of habeas corpus to obtain from the respondents, M. Louise Leamons and J. E. Skaggs, the custody of his infant child, Edward Russell Stapler.

M. Louise Leamons is the daughter of J. E. Skaggs, who for many years has lived with his family in the city of Charleston. January 11, 1919, when but eighteen, she intermarried with R. R. Stapler, thirty-eight years of age. The child,

Edward Russell Stapler, was born to this union April 11, 1922. They lived together after the marriage, first in Chicago, next in Charleston, and then in Dallas, Texas, until June 9, 1924, when he instituted suit for divorce, in Dallas, forcing her to return on that date to Charleston, where she and the child have since resided with her parents.

The enforced separation on his part was due to the fact that she had become addicted to the use of morphine. The habit resulted from the administering of the drug to her under medical direction for menstrual suffering. It had been growing gradually for two or three years before coming to his knowledge in April, 1924. At this time she was in such physical and mental state from the use of the opiate that it became necessary to place her under the supervision of a specialist and the care of a trained nurse by night and day for three or four weeks. He having determined to cast her aside, she sent for her father, who, after reaching Dallas, June 5, 1924, endeavored without avail to dissuade Stapler from this avowed purpose. Notwithstanding her then serious nervous condition, necessitating the attention of a physician, and the fact that she had attempted suicide the previous Saturday night immediately after final announcement of his fixed intention to secure a divorce, on Monday morning, June 9, 1925, the petitioner instituted suit for divorce in the District Court for the 95th Judicial District of Texas; and in the afternoon of that day, an hour or two before she left Dallas in company with her father and child for Charleston, one M. S. Church, a practicing attorney of Dallas, and counsel for Stapler, presented to her an answer for execution to be filed in the proceeding.

The following is the only charge in the petition filed by the petitioner in the suit as ground for divorce:

> "Plaintiff further alleges and represents that the defendant has been guilty of cruel and unreasonable conduct towards him, has been quarrelsome and nagging, all of which said action by the defendant has caused plaintiff great humiliation, shame, mental and physical suffering, all of which has rendered their further living together insupportable."

Relative to the custody and control of the child, the petition represented:

> "That there was born to him and defendant one child, Edward Russell Stapler, a boy now about the age of two years and two months, and in this connection plaintiff says that he is the proper person to have the care, control and management of said child";

and asked for temporary order, giving him the care, control and management of said child, and that upon final hearing he be decreed the custody, control and management of said child.

The answer, signed by M. Louise Stapler, and acknowledged before said M. S. Church, as notary public, after waiving issuance and service of process, states:

> "It is also agreed that in event the divorce is granted herein that the custody, control and management of said infant child, Edward Russell Stapler, may be decreed to the plaintiff herein".

She did not appear at the trial and the petitioner obtained an order, July 11, 1924, dissolving the marriage and awarding the custody, control, care and management of the minor child, Edward Russell Stapler, to him, subject to the right of the mother "to visit and see the child at all reasonable times".

The petition in this case, as originally filed December 15, 1925, after setting up the divorce proceeding and the order dissolving the marriage and decreeing to the petitioner the custody and control of the infant, alleges that by reason of the broken mental and physical condition of his wife on June 9, 1924, he and the respondent J. E. Skaggs entered into an oral agreement that the child might be brought with its mother back to Charleston, but to be later returned on request to the petitioner; that "the defendant M. Louise Leamons is not now and has not been for a period of two years a fit person to have the care, custody and control of said infant, Edward Russell Stapler; that for a long time, to-wit, at least three years prior to the granting of said divorce, she was a drug addict, that is, an habitual user of morphine, to such an extent that she was frequently thereby mentally un-

balanced; that she has recently remarried to one Earl Leamons, who is not able to maintain a home for her and said infant, and that it is necessary for her to keep and maintain said child in the home of her father, the defendant J. E. Skaggs, whose wife is an invalid, and who is likewise unable and incapable of rearing and maintaining said infant''; and that ''both the defendant M. Louise Leamons and her present husband, Earl Leamons, are now and have been for the past few months, using 'dope'; that both of them keep company with and frequently visit in the homes and places of abode of people of immoral reputation in the City of Charleston, West Virginia, and are otherwise guilty of conduct unbecoming those occupying the position of guardians and custodians of an infant child''.

On motion of the petitioner an order was entered herein January 19, 1926, striking from the petition all charges of unfitness against the respondent, M. Louise Leamons, and her present husband, Earl Leamons, to whom she was married in September, 1925. By this action the petitioner rests his case upon the decree of the Texas court, which he contends must be recognized and enforced by this Court, under the full faith and credit clause of the Federal Constitution, as declared in Section 19, Chapter 130 of our Code, unless there has been since its rendition a material change in the condition of the petitioner as well as of the respondent M. Louise Leamons, affecting their respective fitness for the trust.

The respondent M. Louise Leamons denies the application of the Texas court order: (1) on the ground that it was obtained through fraud, and (2) because the facts, existing at the time of the entry of said order, have so changed as to authorize a different judgment.

She denies that there was any agreement on her part giving the petitioner the custody and control of the child, and says that she did not read the alleged answer, and further that it was read or explained to her only to the extent that it waived issuance and service of process in the suit. In this she is corroborated by her father, J. E. Skaggs, who was present at the time of the transaction. The lawyer, M. S. Church, who appears of counsel for Stapler in this proceeding, testifies

that he read and explained the answer to her, but makes no claim that she read or examined it. He admits that he knew or was informed that she was in a nervous condition at the time, and that he took her acknowledgment to the paper "to prove up her signature in event she denied the same". The purported agreement, incorporated in the answer, authorizing the court to grant the custody, control and management of the child to Stapler, was not based upon any previous agreement between the parties. Stapler says: "I did not consider discussing such a thing with her".

In view of the conduct of the witness, M. S. Church, seeking in the divorce proceeding in which he represented the husband to obtain from the wife an answer taking from her the right of custody and care of her infant child, and his continued disregard of legal ethics by appearing as a witness and attorney in this case, must his statements be taken as a verity in opposition to the testimony of the two respondents and the surrounding circumstances? "Fortunately the books show very few cases, in which lawyers have become witnesses for their clients. While there are some cases of an extreme character, in which such practice is necessary, ordinarily it is much to be regretted that such a practice should exist or be encouraged. So reprehensible is the practice generally that it has been much doubted whether a lawyer is a competent witness for his client. Wharton's Law of Evidence, sec. 420. By the Roman law no attorney is permitted to testify as to a matter in which he is professionally employed. *Id.* Sec. 421, note. In 1 Greenl. on Evidence, 13th ed., sec. 364, it is said: 'In regard to attorneys it has in England been held a very objectionable proceeding on the part of an attorney to give evidence, when acting as advocate in the cause, and a sufficient ground for a new trial. But in the United States no case has been found to proceed to that extent, and the fact is hardly ever known to occur.' " *Moats* v. *Rymer,* 18 W. Va. 642, 645.

A foreign decree may be attacked as well for fraud as for want of jurisdiction. "Where a decree in a suit for divorce, so far as it awarded the custody of the minor children to the husband, was tainted with fraud, the wife is entitled to have

such part set aside, and the custody of such children awarded to her." *Trammell* v. *Trammell* (Texas) 80 S. W. 119.

As there has been such change in the situation existing at the time of the entry of the order, justifying its modification in respect to the custody of the child, it is unnecessary to consider the defense of fraud in its procurement. When this order was entered the mother was recovering from the effects of the prolonged use of morphine and at that time it could not be determined whether or not she had entirely overcome the habit. It appears, however, that she has been cured and in fact has not used morphine since the separation from her former husband. She, her present husband, and the child, live in Charleston with her parents. They are all thoroughly devoted to it. The mother and grandparents (who have no other children), bear excellent reputations among their neighbors and acquaintances in Charleston and are amply provided with property to afford the child proper training and education. The petitioner proposes to take the child to his home in Dallas, Texas, presided over by a housekeeper who had been in his employ only a month at the time of giving his deposition in this case. He further says he can secure the services of his mother, eighty-two years of age, who is apparently anxious to live with him; that she is somewhere in Maryland or Pennsylvania, either living with collateral kinsmen in Maryland or visiting old friends in Pennsylvania.

It is not to the interest of this young child that he be taken from the mother who conceived and bore him and has administered to his wants since birth, and delivered his custody to a father so selfish and inhuman as to drive the mother away without justification at a time when above all others she most needed his sympathetic forebearance and aid, depriving her of her child without considering her feelings or rights or giving her an opportunity to reform her conduct, and who now seeks to place the child in a home managed by a stranger or perhaps by a woman of such advanced age that her death would probably remove her about the time her influence on the child would begin to be effective.

The courts do not these days inexorably take from mothers their children of tender years even for the father, if the

mother is a fit person, and has a home for them, but look at all the circumstances. The welfare of the child is the test. The welfare of a tender child is with the mother generally. 9 Am. & Eng. Ency. L. (2d ed.) 867; *Cunningham* v. *Barnes,* 37 W. Va. 746; *Green* v. *Campbell,* 35 W. Va. 698; *Cariens* v. *Cariens,* 50 W. Va. 113, 118.

The writ of habeas corpus, so highly prized among English-speaking people everywhere, designed and admirably adapted to secure individual freedom, without which a vital part of the great charter itself might have been but a solemn asseveration of abstract right, has come to be applied to other uses, and among them, to the ascertainment and enforcement of the right of custody of infant children. *Mathews* v. *Wade,* 2 W. Va. 464. But it is not to be forgotten or overlooked that such use of this writ is of an equitable nature, and therefore the welfare of the infant is the polar star by which the Court is to be guided in the exercise of its discretion; and the Court, when asked to restore, *is not bound by any mere legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just.* *Armstrong* v. *Stone,* 9 Gratt. 102, 107; Church Hab. Corp., Secs. 440, 442. The Court is in no case bound to deliver the child into the custody of any claimant or of any other person, but may leave it in such custody as the welfare of the child at the time appears to require. *Green* v. *Campbell,* 35 W. Va. 698, 702, 14 S. E. 212, 29 A. S. R. 843.

The authorities are in conflict on the question as to the extraterritorial effect of a judgment awarding the custody of children upon a divorce of the parents. Some cases hold that while the judgment is *res judicata* in the State of its rendition, and elsewhere so far as the parents are concerned, it is not *res judicata* as to the right of some other State where the children may subsequently be, to determine the custody of the children as their welfare may require. Other authorities, on the other hand, sustain the proposition that where a decree of divorce fixing the custody of the children of the marriage is rendered in accordance with the laws of another State by a court of competent jurisdiction, such decree will be given full force and effect in other States so long as the circumstances

attending the adoption of the decree remain the same. A majority of the cases seem to hold that in the absence of fraud, or want of jurisdiction affecting its validity, a judgment divorcing a husband and wife and awarding the custody of children of the marriage should be given full force and effect in other States, as to the right to the custody of the children at the time and under the circumstances of its rendition; although the decree has no controlling effect in another State as to facts and conditions arising subsequently to its rendition, and the courts of the latter State may, in proper proceedings, award the custody otherwise than in accordance with the original decree, upon proof of matters subsequent to the decree, which justify such inconsistent award in the interest of the welfare of the children. It is clear that whatever may be the rule adopted, a foreign decree or order is not a bar to a subsequent proceeding looking to its modification because of altered conditions since the time of its rendition, and where such altered conditions make a modification desirable and for the better welfare of the child. 9 R. C. L. p. 477; *Knapp* v. *Knapp*, 26 N. D. 23, 142 N. W. 915; Note 49 L. R. A. N. S. p. 81; *Wilson* v. *Elliott*, 73 S. W. (Texas) 946; *Mylius* v. *Cargill*, 19 N. M. 278, 142 Pac. 918, Note 54 L. R. A. N. S. (1915-B) p. 154.

The writ is therefore denied.

*Writ refused.*