88 S.E.2d 51 (1955)
Betty STOUT
v.
R. D. MASSIE et al.
No. 10687.
Supreme Court of Appeals of West Virginia.
Submitted January 18, 1955.
Decided March 22, 1955.
Dissenting Opinion July 1, 1955.
*52 D. Boone Dawson, Charleston, Wilbert H. Haynes, Fayetteville, for appellant.
R. J. Thrift, Jr., Fayetteville, for appellees.
LOVINS, President.
This appeal was prosecuted to this Court by Betty Stout, hereinafter designated as plaintiff, from a decree of the Circuit Court of Fayette County, West Virginia, whereby the Court held null and void an adoption proceeding concerning the infant daughter of plaintiff by R. D. Massie and Iris Massie, herein designated as defendants, and decreed that the custody of the infant remain with said defendants. The reason for giving the custody of the infant to the defendants is that the plaintiff, by her acquiescence and conduct, had transferred the custody of her infant daughter to the defendants.
On April 21, 1952, the Circuit Court of Fayette County entered a decree providing for the adoption of the infant by defendants. On February 25, 1953, plaintiff, by next friend, instituted this suit in the Circuit Court of Fayette County whereby she prayed that the former decree of adoption of Barbara Ann Williams be set aside. In support of her prayer, plaintiff alleges that she gave birth to the infant on September 4, 1950, out of wedlock, when she was approximately sixteen years of age, and while living with her parents at Pemberton, Raleigh County, West Virginia; that when the infant was approximately six months of age, the father of plaintiff having forced her to leave his home with her infant daughter, plaintiff went to the residence of the defendants, Iris Massie and R. D. Massie, her sister and brother-in-law respectively, who then and presently reside in the vicinity of Gatewood, Fayette County, West Virginia; that she lived with the defendants for at least one year and then went to Cincinnati, Ohio, in October, 1951, to seek employment; that she left her infant daughter with the defendants with the understanding that she would return for the child when she was in a position to care for it; that she corresponded regularly with defendants; that in April, 1952, plaintiff married Herbert Stout who has a home and is well qualified to rear plaintiff's child; that a fraud had been perpetrated on the Court as well as plaintiff and her child in the adoption proceedings; that no notice of the adoption proceedings was ever served on plaintiff although defendants knew where she could be located at all times. Plaintiff denied that she had abandoned her infant daughter, that she had failed to contribute to the support of said child or that she had conducted herself in any way that would warrant the adoption of her child by the defendants.
The defendants' answer admitted the existence of the decree of April 21st, 1952, by which they adopted plaintiff's infant daughter. But, they allege that sometime prior to the 21st day of April, 1952, when their petition for adoption was filed, an order was entered filing this petition and inhibiting and restraining plaintiff from interfering with the care, custody and control of said infant child until full hearing could be had on the merits; that a copy of this order was seen by plaintiff and her husband; that defendants went to Cincinnati, Ohio, in July, 1952, at which time they made known to plaintiff their plans to adopt her infant daughter and that no objections were made; that the reason plaintiff went to Cincinnati was because she was then unmarried and pregnant with child; that defendants have been residents of Fayette County for _____ years, are permanently situated and own their home; that defendant, R. D. Massie is steadily employed as a miner, earning approximately $350 a month; that defendants attempted to assist plaintiff in any way that was possible but had no intention of perpetrating a fraud on the plaintiff or in any way misleading the Court. They prayed that the petition filed on behalf of plaintiff be dismissed.
*53 On March 27, 1953, plaintiff filed a Replication to the Answer of defendants, alleging in effect that the Answer was uncertain, untrue and insufficient and further that the proceedings had on the 21st day of April, 1952, were void and of no effect for the following reasons: (1) That no notice was served upon plaintiff of any hearing to be had in connection with the adoption of Barbara Ann Williams, her daughter; that she at no time saw or had read to her any order in connection with the said adoption proceeding; (2) At no time was there any guardian ad litem, or next friend appointed for the said infant at the hearing of the proposed adoption; (3) that there was no notice published in any newspaper regarding the adoption or the attempt to adopt; that plaintiff had no knowledge of the adoption of her infant daughter until late in the autumn of 1952; that she immediately secured the services of an attorney who after investigation, discovered the decree of adoption, dated April 21, 1952, had been rendered; that she immediately employed counsel to represent her for the purpose of having the adoption decree set aside. Plaintiff denies that she was pregnant at the time she left defendants' home to go to Cincinnati, Ohio.
Certain facts alleged in the petition, answer and replication are in dispute. Plaintiff alleged and so testified that she was forced to leave the home of defendants for the reason that defendant R. D. Massie, her brother-in-law, attempted to have improper relations with her. The mother of plaintiff and defendant, Iris Massie, testified that plaintiff left the home of defendants without just cause and because of an argument over the child. Defendant, R. D. Massie, denied the accusations of plaintiff.
The mother and a sister of plaintiff testified that they were informed by the plaintiff that she was pregnant at the time she went to Cincinnati, and that she had a miscarriage of a six month male child. This testimony is denied by plaintiff.
The record is clear that plaintiff has seen her child only four times during the two years she has been in Cincinnati; that she had never at any time contributed to the support of her daughter; that defendants have provided adequately in every way and have had the sole care and responsibility of the child since she was six months of age; that the plaintiff who is now nineteen years of age has married a man, 28 years old, who is a native of Cincinnati, Ohio; has a respectable standing in the community. He is employed as a dairy worker and has been employed by the same person for nine years with a salary of approximately $76.00 per week. Plaintiff and her husband presently reside in a three and one-half room apartment in a respectable neighborhood in the City of Cincinnati.
Litigation relative to the custody of an infant is cognizable by a court of law in habeas corpus proceedings. Pugh v. Pugh, 133 W.Va. 501, 510, 56 S.E.2d 901, 15 A.L.R.2d 424; Green v. Campbell, 35 W.Va. 698, 14 S.E. 212; Rust v. Vanvacter, 9 W.Va. 600. But such proceedings have been treated by this Court according to the principles of equity.
The instant proceeding was commenced for the purpose of setting aside a former decree of adoption, as well as determining the custody of the infant child of the plaintiff.
The record herein shows that a writ of error was granted to the decree of the trial court. We think it is erroneous to designate the appellate process as a writ of error and we now designate such process as an appeal.
We find nothing in any statute specifically indicating that a court of equity has jurisdiction of this proceeding. But an examination of text books and decided cases in other jurisdictions clearly shows that the jurisdiction and power of the court of equity are of ancient origin. In Hoggs, Equity Principles, First Edition, § 226, the following is stated: "`The powers of a court of chancery in England to act as the guardian of infants, and to exercise a general supervision over all matters pertaining to their persons and estates, passed to and is now generally exercised by courts of chancery in this country without dispute. In the exercise *54 of this jurisdiction, the court may permanently fix the status of infants, even in disregard of the legal rights of parents, when the welfare of the infants requires it.'" 3 Story's Equity Jurisprudence, 14th Edition, § 1752. See Hogg's Equity Procedure, Miller, 3rd Edition, § 788; Richards v. East Tennessee V. & G. Ry. Co., 106 Ga. 614, 33 S.E. 193, 197, 45 L.R.A. 712. In the Richards case, the principle is stated in the following language: "The jurisdiction of courts of equity over the persons and property of infants dates from a very early period in the history of these courts. In its inception, this jurisdiction belonged to the king of England, the same constituting a part of his powers, as parens patriae, to protect his subjects, and was transferred by him to the court of chancery. This jurisdiction is broad, comprehensive, and plenary. In all suits or legal proceedings, of whatever nature, in which the personal or property rights of a minor are involved, the protective powers of a court of chancery may be invoked whenever it becomes necessary to fully protect such rights." See Annotation, 14 A.L.R. 295, 308; 43 C.J.S., Infants, § 5; 27 Am.Jur., Infants, § 105, wherein, among other things, it is stated that a court of equity will take cognizance of any proper case, independent of any statute.
We are of opinion that even though there is no statute conferring such jurisdiction, and a proceeding in habeas corpus is available, a court of equity has jurisdiction to determine the custody of an infant. Likewise, habeas corpus is a proper remedy to determine the custody of an infant or infants. Bell v. Eicholtz, 132 W.Va. 747, 53 S.E.2d 627; State ex rel. Lipscomb v. Joplin, 131 W.Va. 302, 47 S.E.2d 221; Pukas v. Pukas, 129 W.Va. 765, 42 S.E.2d 11; Cunningham v. Barnes, 37 W.Va. 746, 17 S.E. 308; Green v. Campbell, supra.
An examination of the authorities in this state shows that there is an inflexible and controlling principle of law which has been frequently stated by this Court in determining the question of the custody of an infant. In State ex rel. Lipscomb v. Joplin, supra [131 W.Va. 302, 47 S.E.2d 222], this Court held that: "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Frame v. Wehn, 120 W.Va. 208, 197 S.E. 524; Arnold v. Arnold, 112 W.Va. 481, 164 S.E. 850; State ex rel. Cooke v. Williams, 107 W.Va. 450, 148 S.E. 488; State ex rel. Palmer v. Postlethwaite, 106 W.Va. 383, 145 S.E. 738. See Williams v. Williams, 192 Va. 787, 66 S.E.2d 500; Reynolds v. Reynolds, 109 W.Va. 513, 155 S.E. 652.
So far as we have been able to ascertain, this Court has adhered to that principle throughout its existence, and without variation has applied such principle in litigation involving the custody of infants.
There is another principle of almost equal dignity and compelling effect. A parent being the natural guardian of an infant, is entitled to its custody unless such parent has relinquished the custody of the infant to some other person, or is an unfit person to rear it. Pierce v. Jeffries, 103 W.Va. 410, 137 S.E. 651, 51 A.L.R. 1502. See Palmer v. Postlethwaite, supra; Bell v. Eicholtz, supra. "* * * the father or mother of any minor child or children shall be entitled to the custody of the person of such child or children, and to the care of his or their education." Code, 44-10-7.
The parent, however, is not entitled to the custody of the child in all circumstances. State v. Reuff, 29 W.Va. 751, 2 S.E. 801. A trial court exercises a reviewable discretion in disposing of the custody of an infant. Armstrong v. Stone, 9 Grat. 102. See Coffee v. Black, 82 Va. 567. In some instances, this Court has defined the parents' right as a technical right. Connor v. Harris, 100 W.Va. 313, 130 S.E. 281; Pierce v. Jeffries, supra. The rights of a parent are subordinate to the interest of the infant.
In the instant case, the trial court, though indicating that the plaintiff, the natural mother of the infant, is an estimable person, also found that the welfare of the child required it to be left in the custody *55 of the defendants. The record does not disclose that the court has abused its discretion in so finding.
The record shows that the plaintiff left her father's home, under compulsion; went to the home of defendants and stayed there for a considerable length of time; that she went to Chicago in the company of another girl and two boys. It is also established that she went to Cincinnati, Ohio, and remained there for about two years and only saw the infant approximately four times during that interval. The plaintiff also stated that she was pregnant a second time. She now denies this and says it was untrue. If that statement was true or false, it reflects upon her moral character to some extent. There is also proof in the record that she worked at a restaurant as a waitress. Her relatives objected to her working at such restaurant because of its doubtful reputation. The record shows that she stayed out late at night which leads us to believe that a recurrence of this conduct on the part of the plaintiff may happen. True, she is married, but the husband is a stranger to the infant, who would be removed to strange and unusual surroundings if her mother is given her custody.
In view of the foregoing, we conclude that the trial court did not abuse its discretion in awarding the custody of the child to the defendants.
There is another element which supports the finding of the trial court. The mother of the plaintiff, Mrs. Massie, who is plaintiff's sister and one of the defendants and another sister of the plaintiff testify to their distrust of the plaintiff as being a proper person to rear the child.
The record shows that the husband of Mrs. Massie is making good wages and that he owns property; that schools and churches are available to the infant. True, the child may be compelled to walk some distance to embark upon the school bus, but that is not such a great hardship.
The findings of the trial chancellor will not be disturbed unless plainly wrong. Highland v. Davis, 119 W.Va. 501, 195 S.E. 604; Spradling v. Spradling, 118 W.Va. 308, 190 S.E. 537; Wade v. Wade, 115 W.Va. 132, 174 S.E. 787.
The trial court, having found that the child's interest will be promoted by leaving it in the custody of the defendants, evidently knowing the circumstances surrounding the home of the defendants, we are not disposed to reverse that finding and therefore, affirm the same.
It may be well to observe at this point that the custody of the child here decreed is not permanent, but may be altered if changed conditions warrant such change.
Affirmed.
HAYMOND, Judge (dissenting).
Though I agree that both points of the syllabus enunciate correct principles of law I challenge their application to the facts of this case and I dissent from the decision of the majority of the Court in affirming the final decree of the circuit court in so far as it awards the custody of the infant daughter of the plaintiff to the defendants.
From the evidence it is clear that the defendants, one of whom is the elder sister of the plaintiff and the other of whom is the husband of the sister of the plaintiff, have no right to the custody of the child which should be permitted to overcome or surmount the natural right of the plaintiff to have the custody of her daughter of the tender age of three and one half years at the time of the hearing of this case in January, 1954. By one of the provisions of the final decree of the circuit court it set aside and held for naught its prior order permitting the defendants to adopt the child. To the extent that the final decree vacated the former order of adoption the action of the circuit court was correct and proper; and that provision of the final decree effectively rejected and denied any right to the custody of the child claimed by the defendants by virtue of the defective adoption proceeding, instituted by them in the spring of 1952, while the plaintiff was residing in Cincinnati, which because of *56 lack of proper notice to the plaintiff the circuit court properly dismissed.
Though the name of the father of the plaintiff's illegitimate daughter appears in the evidence there is no proof to indicate his whereabouts since the birth of the child in September, 1950, or that he entertains or advances any claim to the custody of the child as its father. In this situation the right of the plaintiff, the mother of the child, to its custody, though not absolute, is a natural right which the circuit court should have recognized and enforced in this proceeding against any claim of the defendants. The evidence fails to show that the plaintiff at any time entered into any agreement by which she relinquished or transferred to the defendants, or either of them, her right to the custody of her infant daughter or that she lost her right by abandoning or deserting the child. The evidence shows affirmatively that she repeatedly refused to consent to its adoption by the defendants.
It appears that for some time before her child was born, and after its birth until the marriage of the plaintiff on April 12, 1952, in Cincinnati, where she became acquainted with her husband, the plaintiff was guilty of indiscretions and highly questionable and improper moral conduct and of some neglect of and indifference toward her child, such as her trip to Chicago with another girl and two young men, where she stayed for a period of several weeks, the statement attributed to her that she became pregnant after the birth of the child and before her marriage, which she emphatically denied, and her failure to furnish her child any motherly care or financial support. The harsh and unfortunate circumstances with which she was confronted during that period, however, constituted, at least to some extent, an excuse for these shortcomings. In the absence of any proof to show that she gave birth to a child or experienced a miscarriage during the time between the birth of her infant daughter in September, 1950, and her marriage in April, 1952, one of which events, except in the rare instances in which there may be a calcification of a fetus in the body of the mother, must necessarily have occurred if she was in fact pregnant, the accusation of her pregnancy is entirely unsupported. She denied that during this same period she had sexual intercourse with any man and there is no proof to controvert her testimony on that subject.
It further appears that almost immediately after the birth of her child at the home of her parents at Pemberton, in Raleigh County, she was forced by her father to leave the home of her parents and to go with her child to live in the modernly unequipped home of the defendants on their small farm in a somewhat remote section of Fayette County about two miles distant from the town of Gatewood in that county. There, according to the testimony of the plaintiff, though the defendants properly cared for and treated the child, their treatment of the plaintiff caused her to leave for the purpose of earning a livelihood for herself in an endeavor ultimately to obtain enough money to enable her to support herself and her child suitably at some other place.
It is reasonable to infer that, while the plaintiff was in Chicago and Cincinnati and absent from the home of the defendants, where of necessity she left the child, she intended to return and take it when she was able to furnish it with a suitable place to live. This she did in September, 1952, about five months after her marriage, when she came to the home of the defendants for that purpose; and at that time her effort to obtain the custody of her child was thwarted by a court order in a proceeding instituted by the defendants of which the plaintiff received no valid notice.
Regardless, however, of the indiscretions and the neglectful conduct of the plaintiff, during the period which elapsed between the birth of her child on September 4, 1950, and the marriage of the plaintiff on April 12, 1952, since her marriage the plaintiff has reformed, has become, and now is, a person of good moral character and is living a settled and normal life in a respectable neighborhood in the City of Cincinnati, Ohio. The evidence establishes these facts and from the evidence the circuit court found, *57 and stated in its opinion, filed as part of the record in this proceeding, that the "plaintiff has become an estimable young woman" who is "married to a fine young man". Thus it clearly appears that at the time the plaintiff instituted this proceeding to obtain the custody of her child she was, as its mother and natural guardian, a fit, proper and suitable person to have the custody of and to rear her infant daughter of tender years. In Pierce v. Jeffries, 103 W.Va. 410, 137 S.E. 651, 653, 51 A.L.R. 1502, this Court said: "In order to separate a child from its parent on the ground of the latter's unfitness, there must be cogent and convincing proof of such fact."
The right of a parent to the custody of his or her child, though not absolute, is founded on natural law and arises because the child is his or hers to care for and rear. State ex rel. Lipscomb v. Joplin, 131 W.Va. 302, 47 S.E.2d 221; State ex rel. Bennett v. Anderson, 129 W.Va. 671, 41 S.E.2d 241; Straughan v. Straughan, 115 W.Va. 639, 177 S.E. 771; Connor v. Harris, 100 W.Va. 313, 130 S.E. 281; Cunningham v. Barnes, 37 W.Va. 746, 17 S.E. 308, 38 Am.St.Rep. 57. This right of a parent will be respected when it has not been transferred or abandoned. Settle v. Settle, 117 W.Va. 476, 185 S.E. 859; Straughan v. Straughan, 115 W. Va. 639, 177 S.E. 771; Pierce v. Jeffries, 103 W.Va. 410, 137 S.E. 651, 51 A.L.R. 1502; Buseman v. Buseman, 83 W.Va. 496, 98 S.E. 574; Cunningham v. Barnes, 37 W. Va. 746, 17 S.E. 308, 38 Am.St.Rep. 57; Green v. Campbell, 35 W.Va. 698, 14 S.E. 212; State v. Reuff, 29 W.Va. 751, 2 S.E. 801, 6 Am.St.Rep. 676; Rust v. Vanvacter, 9 W.Va. 600. In the case of a young child the law favors the mother if she is a fit person. Settle v. Settle, 117 W.Va. 476, 185 S.E. 859; Beaumont v. Beaumont, 106 W.Va. 622, 146 S.E. 618; Stapler v. Leamons, 101 W.Va. 235, 132 S.E. 507; Norman v. Norman, 88 W.Va. 640, 107 S.E. 407; Nestor v. Nestor, 83 W.Va. 590, 98 S.E. 807; Dawson v. Dawson, 57 W.Va. 520, 50 S.E. 613, 110 Am.St.Rep. 800; Cariens v. Cariens, 50 W.Va. 113, 40 S.E. 335, 55 L.R.A. 930. Notwithstanding the conclusion of the circuit court that the plaintiff is a suitable and proper person to have the custody of her child, it found that the welfare of the child would not be promoted by awarding its custody to her and, on that ground alone, the circuit court refused to award the plaintiff the custody of the child. This finding of the court is against the clear preponderance of the evidence and is clearly wrong.
The evidence shows that the plaintiff and her husband, who desires his wife to have the custody of the child, occupy and maintain a suitable home in a respectable section in the City of Cincinnati in which the child could and would be properly cared for, reared and educated. They live in an urban community where the many advantages which such a neighborhood affords are readily available. The home of the plaintiff and her husband, in which they desire to raise and care for the child, is located in a community in which there are excellent schools and numerous churches which are accessible to residents of that area. The educational facilities and the opportunities for religious training in the community in which the plaintiff and her husband now reside are decidedly superior to those of the rural community in which the defendants live. The plaintiff and her husband are several years younger than the defendants. Their home is in a modern apartment building and the plaintiff's husband is a person of good moral character, is industrious and regularly employed, and earns in wages approximately eighty dollars per week. He desires, and is financially able, to support the child and to give her the advantages of a satisfactory standard of living. The defendants, who are respectable people, have affection for the child, and are physically and financially able to care for and support it, live in a four room farm house which is not equipped with many present day conveniences such as modern heating, lighting and bathing facilities. Their home is located in a rural community and if they retain their present custody of the child until she attains school age, she will be required to travel on an unimproved road a distance of about one mile to the main road and to continue to travel on it for a distance of approximately two miles to the small town of Gatewood where the nearest school and *58 church are located. Moreover if the present custody of the child by the defendants continues she will grow to girlhood and young womanhood in a community where her illegitimate birth is known to all her neighbors instead of in a distant urban community in which her mother now resides where that information is not generally known and, if known at all, will likely be quickly forgotten.
In view of the foregoing clearly established facts, the welfare of the child would, in my judgment, be best promoted by an award of the custody of the child to the plaintiff which would enable her to be reared in her new home by her own mother. Though an award of the custody of this little girl to her mother, who is now a nonresident of this State, would result in the removal of the child from this State to a foreign jurisdiction, a court of competent jurisdiction, in this State, has the power to award the custody of an infant to a person who is not a resident of this State and to permit such person to remove the child to another state or foreign jurisdiction, and may exercise such power when such an award of custody will serve or promote the welfare of the child. Pugh v. Pugh, 133 W.Va. 501, 56 S.E.2d 901, 15 A.L.R.2d 424.
This Court has repeatedly held that in any proceeding involving the custody of an infant the welfare of the child is of paramount and controlling importance and is the polar star by which the discretion of the Court must be guided. Pugh v. Pugh, 133 W.Va. 501, 56 S.E.2d 901, 15 A.L.R.2d 424; State ex rel. Lipscomb v. Joplin, 131 W.Va. 302, 47 S.E.2d 221; Pukas v. Pukas, 129 W.Va. 765, 42 S.E.2d 11; Harloe v. Harloe, 129 W.Va. 1, 38 S.E.2d 362; Suter v. Suter, 128 W.Va. 511, 37 S.E.2d 474; Frame v. Wehn, 120 W.Va. 208, 197 S.E. 524; Arnold v. Arnold, 112 W.Va. 481, 164 S.E. 850; Reynolds v. Reynolds, 109 W.Va. 513, 155 S.E. 652; State ex rel. Cooke v. Williams, 107 W.Va. 450, 148 S.E. 488; State ex rel. Palmer v. Postlethwaite, 106
W.Va. 383, 145 S.E. 738; Connor v. Harris, 100 W.Va. 313, 130 S.E. 281; Boos v. Boos, 93 W.Va. 727, 117 S.E. 616; Buseman v. Buseman, 83 W.Va. 496, 98 S.E. 574; Dawson v. Dawson, 57 W.Va. 520, 50 S.E. 613, 110 Am.St.Rep. 800; Cariens v. Cariens, 50 W.Va. 113, 40 S.E. 335, 55 L.R.A. 930; Cunningham v. Barnes, 37 W.Va. 746, 17 S.E. 308, 38 Am.St.Rep. 57; State v. Reuff, 29 W.Va. 751, 2 S.E. 801, 6 Am.St. Rep. 676; Rust v. Vanvacter, 9 W.Va. 600. Under the evidence the circuit court, in awarding the custody of the infant child of the plaintiff to the defendants, has disregarded the welfare of the child and has abused its discertion in awarding the custody of the child to the defendants.
A decree, based on a finding of fact which is against the plain preponderance of the evidence or is clearly wrong, will be reversed. Sturm v. City of St. Albans, 138 W.Va. 911, 78 S.E.2d 462; Smith v. Smith, 138 W.Va. 388, 76 S.E.2d 253; McCausland v. Jarrell, 136 W.Va. 569, 68 S.E.2d 729; Adams v. Ferrell, 135 W.Va. 463, 63 S.E.2d 840; Tokas v. J. J. Arnold Co., 122 W.Va. 613, 11 S.E.2d 759; Buskirk v. Bankers Finance Corporation, 121 W.Va. 361, 3 S.E.2d 450; Pickens v. O'Hara, 120 W.Va. 751, 200 S.E. 746; Spradling v. Spradling, 118 W.Va. 308, 190 S.E. 537; Gall v. Cowell, 118 W.Va. 263, 190 S.E. 130; Smith v. Pew, 116 W.Va. 734, 183 S.E. 53; Wood v. Snodgrass, 116 W.Va. 538, 182 S.E. 286; Meyers v. Washington Heights Land Co., 107 W.Va. 632, 149 S.E. 819; Blue v. Hazel-Atlas Glass Co., 106 W.Va. 642, 147 S.E. 22; Hendrick v. Jenkins, 104 W.Va. 486, 140 S.E. 483.
For the foregoing reasons I would give recognition to the natural right of the plaintiff to the custody of her child and reverse the decree of the circuit court in so far as it awards the custody of the child to the defendants. I would also award the custody of the child to the plaintiff and assess costs against the defendants.