NOAH CANTRELL

*v.*

MARY JANE CANTRELL

(No. 10980)

Submitted September 23, 1958. Decided October 28, 1958.

W. H. *Ballard, II,* for plaintiff in error.

*McClintic, James, Wise & Robinson, Robert E. Magnuson, Albert A. Barley,* for defendant in error.

DONLEY, JUDGE:

Noah Cantrell (hereinafter called the "plaintiff") instituted this proceeding in *habeas corpus* in the Circuit Court of McDowell County to regain custody of his children, Ronald Lee Cantrell, age four, and Deborah Ann Cantrell, age two, from his former wife, Mary Jane Cantrell, (hereinafter called the "defendant").

The defendant filed an answer to the writ, and a hearing was held by the circuit court. It appeared from the testimony and evidence introduced at the hearing that the plaintiff and defendant were married in the State of Virginia, and moved to Anderson, Indiana, in 1955. While the parties and their children were living in Madison County, Indiana, the plaintiff, on June 4, 1956,

secured an absolute divorce from the defendant. A certified copy of the decree of the Circuit Court of Madison County was introduced in evidence, and it appears therefrom that the custody of the children was awarded to the plaintiff, but this is obviously a typographical error, for it is conceded by the parties that the custody of the children was awarded to the defendant and that the plaintiff was ordered to pay fifteen dollars a week for their support. Thereafter, on February 9, 1957, the plaintiff caused to be served upon the defendant a summons to appear before the Circuit Court of Madison County, Indiana, to answer a petition filed on behalf of the plaintiff for modification of the original decree as to the custody of the children. This summons was duly and regularly served upon the defendant by leaving a certified copy at her last place of residence, and she admits receiving it. On the return day of the notice, February 18, 1957, the defendant appeared before the court, but being unable financially to employ counsel it was agreed that the matter should be postponed until a later date. There is a conflict in the evidence as to whether or not the defendant knew that the hearing was postponed until February 25, 1957.

When the cause came on to be heard on February 25, 1957, the defendant made no appearance, and the court entered a decree finding that it would be to the best interests of the children to change the former decree and to award their custody to the plaintiff, and it was so ordered. The defendant was granted reasonable visiting privileges and the support order previously made was dissolved. It appears that at this second hearing no evidence was produced by the plaintiff in support of his prayer for change in the custody of the children, and that the decree was entered following a colloquy between the Judge and the plaintiff's counsel. However, we cannot go back of the decree of the Indiana court. It appears to be regular upon its face, and cannot be collaterally attacked in this proceeding. *Anderson* v. *Anderson,* 74 W. Va. 124, 81 S. E. 706.

Shortly before the entry of the decree on February 25, 1957, the plaintiff took the children from a hotel room in the City of Anderson where they were under the temporary care of a maid employed by the defendant, and brought them to Bartley, McDowell County, West Virginia, and placed them with his sister, Ella Jones, and his mother.

The plaintiff returned to Anderson, Indiana, and remarried some time during the month of October, 1957. On March 3, 1957, the defendant left Anderson, Indiana, and returned to the home of her parents, which was also at Bartley, West Virginia; and while she denies that she knew that the Indiana court had awarded the custody of the children to the plaintiff prior to that time, it is shown that she was so informed by Mrs. Jones some time in the month of March, 1957. Between the months of March, 1957, and September, 1957, the defendant from time to time visited the children at the home of Mrs. Jones. However, in September, 1957, the defendant again returned to the home of Mrs. Jones, and succeeded in getting the children into an automobile without the consent of Mrs. Jones, took them to the home of her parents, and refused to surrender them.

On December 16, 1957, the plaintiff instituted this proceeding for a writ of *habeas corpus*. At the hearing, the trial court refused to admit any evidence concerning the question of whether or not the welfare of the children would be promoted by leaving them in the custody of their mother. The plaintiff took the position that the sole question before the court was whether or not the decrees of the Circuit Court of Madison County, Indiana, were entitled to full faith and credit under Article IV, Section 1 of the Constitution of the United States.

Both the defendant and the plaintiff offered to introduce evidence upon the issue of the welfare of the children. Following these offers by counsel, the plaintiff moved to strike out all the evidence of the defendant. This motion was overruled, and the court said: "The motion to grant the writ on the evidence heretofore in-

troduced at this hearing, which is based on a valid decree, as the court sees it, of the State of Indiana, will be granted under the full faith and credit clause of the Constitution of the United States, Article IV, Section 1, of the Constitution of the United States."

The defendant excepted to the ruling of the court, and gave notice of intention to appeal to this Court, and the final order, which was entered by the Circuit Court of McDowell County on January 18, 1958, awarded the custody of the children to the plaintiff. It was further ordered that the temporary custody of the children should remain with the defendant during the pendency of the application for the writ of error.

We granted a writ of error on April 7, 1958, and, on June 24, 1958, we granted a motion for leave to reverse and ordered that the printing of the record be dispensed with. The case now comes on for hearing on this motion to reverse the order of January 18, 1958.

In support of his position that full faith and credit must be given to the decrees of the Circuit Court of Madison County, Indiana, and this Court cannot, upon petition for a writ of *habeas corpus,* modify such decrees, or make a change in the custody of the children, the plaintiff relies upon several cases. While it will prolong this opinion to do so, we feel bound to discuss these cases and to point out why they are not controlling. The first of them is *May* v. *Anderson,* 345 U. S. 528, 73 S. Ct. 840, 97 L. ed. 1221, which is not in point. There, the custody of minor children was awarded to their father in an *ex parte* divorce proceeding by a decree of a Wisconsin court which had no personal jurisdiction over the mother. The Supreme Court of the United States held that the Ohio courts were not bound to give full faith and credit to such a decree of the Wisconsin court. In addition, there was no evidence introduced, or sought to be introduced in the Ohio court, concerning the welfare of the children.

In *Anderson* v. *Anderson,* 74 W. Va. 124, 81 S. E. 706,

after the mother had been awarded the custody of the children in a divorce suit in Indiana, the father took possession of the children and sent them to West Virginia. Upon a petition by the mother for *habeas corpus* in this State, the father did not attempt to establish that the welfare of the children would be promoted by a change in their custody. His return to the writ denied the validity of the decree on a jurisdictional ground, the absence of the children from Indiana and their presence in West Virginia during the divorce proceedings, lack of the required period of residence in Indiana on the part of the wife, and failure to prove her *bona fide* residence there for the requisite statutory period. In these circumstances, this Court held that full faith and credit would be given to the decree of the Indiana court.

In *Suter* v. *Suter,* 128 W. Va. 511, 37 S. E. 2d 474, while the children were in the care of the father's sister and her husband, in West Virginia, the wife obtained in Ohio a decree awarding the custody of the children to her. The father was duly served with process in that proceeding. Some sixteen months after the decree in the Ohio court, and while the children still remained in the care of the father's sister and her husband, the father instituted a suit for divorce against the mother in Wetzel County, West Virginia. The mother was proceeded against by order of publication, being a nonresident of West Virginia, but she procured counsel and the case was for some reason dismissed. Thereafter, the father established his legal residence in Ritchie County, West Virginia, and instituted a second suit for divorce in the circuit court thereof. An order of publication was awarded and a decree of divorce entered by the Circuit Court of Ritchie County in favor of the father and granting him the custody of the children. Thereafter, the mother instituted a proceeding in *habeas corpus* grounded solely upon the decree of the Ohio court, basing her right to relief on the contention that full faith and credit should be accorded to it. This Court held that the decree of the Ohio court was entitled to full faith and credit in this State, subject to the limitation that in determining the

custody of the children their best interest is the controlling consideration. The Court said:

> "The custody and control of the children is one of direct importance to the authorities of the State in which they reside. The children residing in this State, and there being a suit instituted for a divorce in a court of competent jurisdiction in this State, that court has the right to decree the custody of the children in that suit. Code, 48-2-15, as amended by Chapter 35, Acts of the Legislature, 1935. It was not precluded from decreeing the custody of the children, even if its decree ran counter to that entered by the Ohio court."

After discussing other authorities the Court concluded:

> " . . . notwithstanding the fact that the order of the Common Pleas Court of Jefferson County, Ohio, is entitled to full faith and credit, on the facts presented at the time the same was entered, the subsequent residence of the children within the jurisdiction of the Courts of this State, gives to any court of this State, having jurisdiction of a divorce suit between the parents, the right to determine and decree the custody of the children of the marriage sought to be dissolved. . . . We think, therefore, that the decree of divorce entered by the Circuit Court of Ritchie County on October 9, 1944, so long as the same remains in force and effect, bars relief in a *habeas corpus* proceeding based upon an order entered by the Common Pleas Court of Jefferson County, Ohio."

In *Pukas* v. *Pukas*, 129 W. Va. 765, 42 S. E. 2d 11, the father was granted a divorce from the mother and was awarded the custody of their three-year old daughter by a decree of a Nevada court. Later, the mother instituted a proceeding in the Municipal Court of Philadelphia, where all the parties were located, and it was agreed between the father and mother that the best interest of the child required that her custody be awarded to the paternal grandmother, and an order was entered to that effect. Thereafter, the mother took the child from the grandmother's home in Philadelphia and went

to Preston County, West Virginia, where the child was being illegally detained by the mother and her father. The maternal grandmother filed a petition in *habeas corpus*. This Court gave effect to the decree of the Nevada court, pointing out that the principal purpose of the mother's return to the writ of *habeas corpus* was to attack collaterally the decree in the divorce proceeding in Nevada and the order entered in the custody proceeding in Philadelphia. There were no allegations or proof showing a change in the circumstances, affecting the welfare of the child since the entry of either of those decrees.

It will thus be seen from the foregoing analysis that the authorities relied upon by the plaintiff are readily distinguishable from the case now before us.

The defendant relies upon the following authorities, none of which involved the effect of a foreign decree: *Stout* v. *Massie,* 140 W. Va. 731, 88 S. E. 2d 51; *Frame* v. *Wehn,* 120 W. Va. 208, 197 S. E. 524; and *Arnold* v. *Arnold,* 112 W. Va. 481, 164 S. E. 850.

The case which is controlling (and which, curiously enough, is cited by both parties) is *Stapler* v. *Leamons,* 101 W. Va. 235, 132 S. E. 507. There, the father obtained an absolute divorce from the mother and was awarded the custody of their son, by a decree of a Texas court. It was agreed that the child might be brought with its mother back to Charleston, West Virginia, but to be later returned upon the request of the father. Thereafter, the father filed an original petition in *habeas corpus* in this Court, alleging that the mother was an unfit person to have the care and custody of the child, but this allegation was later stricken from the petition and the father rested his case upon the decree of the Texas court, contending that it must be given full faith and credit under the Federal Constitution. The Court denied the relief, the syllabus reading:

> "A foreign decree or order awarding the custody of a minor child in a divorce suit is not

*res judicata* in a subsequent proceeding in this State, involving the custody of the infant, where there has been such change in the conditions since the rendition of the foreign judgment as to render its modification desirable for the welfare and protection of the child."

The Court went on to say:

"The authorities are in conflict on the question as to the extraterritorial effect of a judgment awarding the custody of children upon a divorce of the parents. Some cases hold that while the judgment is *res judicata* in the State of its rendition, and elsewhere so far as the parents are concerned, it is not *res judicata* as to the right of some other State where the children may subsequently be, to determine the custody of the children as their welfare may require. Other authorities, on the other hand, sustain the proposition that where a decree of divorce fixing the custody of the children of the marriage is rendered in accordance with the laws of another State by a court of competent jurisdiction, such decree will be given full force and effect in other States so long as the circumstances attending the adoption of the decree remain the same. A majority of the cases seem to hold that in the absence of fraud, or want of jurisdiction affecting its validity, a judgment divorcing a husband and wife and awarding the custody of children of the marriage should be given full force and effect in other States, as to the right to the custody of the children at the time and under the circumstances of its rendition; although the decree has no controlling effect in another State as to facts and conditions arising subsequently to its rendition, and the courts of the latter State may, in proper proceedings, award the custody otherwise than in accordance with the original decree, upon proof of matters subsequent to the decree, which justify such inconsistent award in the interest of the welfare of the children. It is clear that whatever may be the rule adopted, a foreign decree or order is not a bar to a subsequent proceeding looking to its modification because of altered conditions *since the time of its rendition,* and where such altered conditions make a modi-

fication desirable and for the better welfare of the child. 9 R. C. L. p. 477; *Knapp* v. *Knapp,* 26 N. D. 23, 142 N. W. 915; Note 49 L. R. A., N. S. p. 81; *Wilson* v. *Elliott,* 73 S. W. (Texas) 946; *Mylius* v. *Cargill,* 19 N. M. 278, 142 Pac. 918, Note 54 L. R. A., N. S. (1915-B), p. 154." (Italics supplied.)

A case which is precisely like that which we have under consideration is *State ex rel. Girtman* v. *Ricketson,* 221 La. 691, 60 So. 2d 88. There, the husband and wife were divorced in Florida and the custody of the child was awarded to the father. Thereafter, the mother moved to Louisiana and remarried. She requested the father to send the child to her to spend the Christmas holidays in New Orleans, promising to return him, but after the child had arrived she refused to do so. The father then brought a proceeding in *habeas corpus* in Louisiana. The Court held that notwithstanding that there was a valid and existing award of custody rendered by the Florida court, the Louisiana court had jurisdiction to make a custody award on behalf of the State as *parens patriae,* regardless of the fact that the child was domiciled in Florida and was in the State of Louisiana only for the time being; and that altered conditions may be shown to exist, justifying a change of custody in the interest of the child's welfare. In that case, as in the one now before us, the trial court had excluded testimony bearing upon the question of the welfare of the child. The Louisiana court held that this exclusion was error, and remanded the case for the purpose of receiving whatever testimony might be. offered regarding changed conditions arising subsequent to the entering of the Florida decree awarding custody. It is interesting to note that following this decision, on remand of the case the trial judge did hear testimony and, while the matter was still pending before him, the father came to Louisiana, took the child, and carried it back to Florida. *Id.* 222 La. 576, 63 So. 2d 3.

The great weight of authority is to the effect, as stated in an Annotation in 4 A. L. R. 2d 41, that: "even in the

face of an admittedly valid existing award of custody rendered by a competent court of a foreign state, a court will nonetheless have jurisdiction to make a custody award on behalf of the state as parens patriae, notwithstanding that the child in dispute is domiciled without the state and is only in the state for the time being." This is true even though the child has been unlawfully detained, without permission, in the state of the forum. *Id.* page 54.

An excellent and concise summary of the law applicable to this case is found in the note to *State* v. *Ricketson, supra,* by Louise Korns, in 27 Tulane L. Rev. 361, and it is there pointed out that since the foreign custody decree is usually regarded as *res judicata* as to conditions as they existed at the time the foreign decree was rendered, only matters that have occurred subsequent to the foreign custody decree can be litigated in the new decision. See *Bleakley* v. *Barclay,* 75 Kan. 462, 89 P. 906; *State* v. *Giroux,* 19 Mont. 149, 47 P. 798; *Dixon* v. *Dixon,* 76 N. J. Eq. 364, 74 A. 995; Annotations, 20 A. L. R. 815; 72 A. L. R. 441; 116 A. L. R. 1299; 160 A. L. R. 400. It is the doctrine laid down in *Stapler* v. *Leamons,* 101 W. Va. 235, 132 S. E. 507; and we think this is a salutary limitation upon the scope of the inquiry to be made in a *habeas corpus* proceeding such as that which is now before us. Accordingly, upon a hearing of this matter the trial court should disregard the voluminous allegations of misconduct and unfitness of either of the parents prior to the rendition of the second custodial decree of the Circuit Court of Madison County, Indiana, and should limit the present inquiry to relevant facts and circumstances which may be shown to have occurred since that time affecting the welfare of the children, and which may or may not justify a change in their custody. We therefore hold that it was reversible error for the Circuit Court of McDowell County to refuse to permit the defendant to introduce proper evidence concerning such matters.

It is true that the effect of the decisions hereinbefore

discussed or referred to may produce unfortunate results. Mr. Justice Jackson and Mr. Justice Reed stated in *May* v. *Anderson*, 345 U. S. 528, 73 S. Ct. 841, 97 L. ed. 1221, in their dissenting opinion, that such decisions will author new confusions, and would seem "to reduce the law of custody to a rule of seize-and-run". And, as was also said by Mr. Justice Rutledge in his concurring opinion in *People ex rel. Halvey* v. *Halvey*, 330 U. S. 610, 67 S. Ct. 903, 91 L. ed. 1133:

> "The result seems unfortunate in that, apparently, it may make possible a continuing round of litigation over custody, perhaps also of abduction, between alienated parents. That consequence hardly can be thought conducive to the child's welfare. And, if possible, I would avoid such a distressing result, since I think that the controlling consideration should be the best interests of the child, not only for disposing of such cases as a matter of local policy . . . but also for formulating federal policies of full faith and credit as well as of jurisdiction and due process in relation to such dispositions . . . the effect of the decision may be to set up an unseemly litigious competition between the states and their respective courts as well as between parents. Sometime, somehow, there should be an end to litigation in such matters."

There is much force in this position, but we think that *Stapler* v. *Leamons*, 101 W. Va. 235, 132 S. E. 507, binds us to decide the present case in accordance with the rule therein set forth. Even if this were not so, we should be reluctant to adopt a view which would run counter to principles approved by the great majority of the able judges in other jurisdictions who have had occasion to consider the matter. If the question were new, it might be worthy of consideration, but it is impossible to "overthrow all the books." *Allen* v. *Harris*, 1 Lord Raym. 122 (1701). "It is 'safer to travel the path which the law has trodden, instead of discovering another one, . . . . unless it is very certain that the new path will enable us to reach not only most of the re-

sults which have been reached by the old one, but all, or at least all which ought to be reached'." *Chase National Bank* v. *Sayles,* 11 F. 2d 948 (C. C. A. 1).

The motion to reverse the order entered on January 18, 1958, by the Circuit Court of McDowell County, is sustained; and the proceeding is remanded in order that evidence may be produced, within the limitations hereinbefore set forth, concerning the welfare of the children.                                                  *Reversed.*